Filed 2/6/14  In re Joshua L. CA2/1 (unmodified opn. attached)

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION ONE

| | |
|---|---|
| In re JOSHUA L., a Person Coming Under the Juvenile Court Law. | B245686<br>(Los Angeles County<br>Super. Ct. No. MJ21420) |
| THE PEOPLE,<br><br>        Plaintiff and Respondent,<br><br>        v.<br><br>JOSHUA L.,<br><br>        Defendant and Appellant. | ORDER MODIFYING OPINION AND DENYING PETITION FOR REHEARING<br><br>[NO CHANGE IN JUDGMENT] |
| In re<br><br>        JOSHUA L.,<br><br>                on Habeas Corpus. | B248397<br>(Los Angeles County<br>Super. Ct. No. MJ21420) |

THE COURT:

        It is ordered that the opinion filed herein on January 8, 2014, be modified as follows:

        On page 2, second sentence of the third paragraph:  Change "On March 16, 2012" to "On or about March 16, 2012."

There is no change in the judgment.

The petition for rehearing is denied.

_____

CHANEY, Acting P.J.         JOHNSON, J.         MILLER, J.[*]

_____

[*] Judge of the Los Angeles Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.

Filed 1/8/14 (unmodified version)

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b). This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION ONE

| | |
|---|---|
| In re JOSHUA L., a Person Coming Under the Juvenile Court Law. | B245686<br>(Los Angeles County<br>Super. Ct. No. MJ21420) |
| THE PEOPLE,<br><br>　　　Plaintiff and Respondent,<br><br>　　　v.<br><br>JOSHUA L.,<br><br>　　　Defendant and Appellant. | |
| In re<br><br>　　　JOSHUA L.,<br><br>　　　　　on Habeas Corpus. | B248397<br><br>(Los Angeles County<br>Super. Ct. No. MJ21420) |

APPEAL from an order of the Superior Court of Los Angeles County, Akemi Arakaki, Judge. Affirmed.

ORIGINAL PROCEEDING; petition for a writ of habeas corpus, Akemi Arakaki, Judge. Petition denied.

Leslie G. McMurray, under appointment by the Court of Appeal, for Defendant, Appellant and Petitioner.

Kamala D. Harris, Attorney General, Dane R. Gillette, Chief Assistant Attorney General, Lance E. Winters, Senior Assistant Attorney General, Steven D. Matthews, Supervising Deputy Attorney General, and Analee J. Brodie, Deputy Attorney General, for Plaintiff and Respondent.

_____

Joshua L. appeals from the juvenile court order declaring him a ward of the court and ordering him home on probation, after the court found true the allegation that Joshua L. made a criminal threat and denied Joshua L.'s motion to declare the crime a misdemeanor. Joshua L. also filed a petition for habeas corpus, which we consider with his appeal.[1] We affirm the disposition and deny the petition for habeas corpus.

## BACKGROUND

A petition filed May 29, 2012, pursuant to section 602 of the Welfare and Institutions Code, alleged that in March 2012, then fifteen-year-old Joshua L. violated Penal Code section 422, subdivision (a), by making a criminal threat against E.V. (count 1) and another victim, Lloyd S. (count 2), and that the offenses were felonies. After a contested adjudication hearing, the juvenile court found true the allegation that Joshua L. threatened E.V., and dismissed count 2 as to Lloyd S. The court denied Joshua L.'s motion to declare the offense a misdemeanor, and placed Joshua L. home on probation.

At the adjudication, E.V. testified that he attended high school with Joshua L. On March 16, 2012, E.V. was using his telephone in class, "and . . . happened to be on Facebook and went to Joshua's profile and scrolled down through to a threat." E.V. "just . . . happened to scroll down and read it, and . . . was kind of offended just because of the incident that occurred before." E.V. read the following: "[I']ll put a bullet into

_____

[1] We grant Joshua L.'s motion to recognize his reply brief on appeal as a reply filed in connection with his petition for habeas corpus.

2

both of your heads and go to jail for it because [I] have enough balls to kill ya, so don't talk" "because the next time [I] will be holdin, and there won[']t be shit talk for long befor[e] [I] rip a hole in your gut pull everything out and stomp it out. [F]orgive me if you don[']t" "like my words but [I] don[']t give a fuck because the next time [I] see you there will be blood on the floor and some shit" "on the floor and some shit stolen from you gust [sic] like you did to me. [T]his goes out to [E.V.] and [Lloyd S.]. [Y]ou butt pirate faggots. . ." E.V. called the posting "a rat threat" that Joshua L. made out of frustration, and was "pretty angry" when he saw it. E.V. "wasn't afraid, but at the same time you never know, and there's a possibility that it could happen. But [he] just tried to keep to [him]self that there's really nothing to be afraid of." He was afraid about a fight breaking out between him and Joshua L., and believed that as tension between them increased, the fight was drawing closer. E.V. was more concerned after he read the posting. Asked if he believed Joshua L. "could carry out the threats," E.V. responded, "I don't believe he would have," but E.V. did believe Joshua L. *could* have carried them out, including Joshua L.'s threat to put a bullet in his head.

On cross-examination, E.V. testified that he and Joshua L. had been friends for at least all of ninth grade, but their relationship had soured and they were no longer friends. Joshua L. did not tell E.V. to look at the post, which was on Joshua L.'s Facebook page. E.V. did not know Joshua L. to be a violent person; "[h]e was just a calm regular average kid." When E.V. reported the threat, he did so because he didn't want to react, and wanted someone to step in and make sure there was no fight.

Ryan Butchart testified that he worked at the high school as a security guard, when E.V. approached him on or about March 16, 2012. E.V. told Butchart that he had received threats over Facebook, and showed him an image of Joshua L.'s Facebook page. E.V. was scared that Joshua L. would do something to him on the way home, and was nervous and upset, appearing anxious and fidgeting with his hands. The school was closing for spring break, and the first day back Butchart reported his encounter to the deputy sheriff and turned over the Facebook image. Butchart was present in the security

office when the deputy interviewed Joshua L., who answered yes when Butchart asked him if he had written the words.  Joshua L. said "he was angry and frustrated with these guys.  He was tired of them always talking crap," and he was venting.

Deputy John Griffith testified that Butchart called him at the end of March 2012 and told him that a threat to a student had been made over Facebook.  Butchart showed him the Facebook image, and Deputy Griffith spoke with E.V.  After E.V. told him about the threat, Deputy Griffith asked him if he believed the threat, and E.V. said yes:  "He believed it was a valid threat."  Deputy Griffith then spoke with Joshua L. and asked him if he had made the threats over Facebook.  Joshua L. "told [Deputy Griffith] that he did, but didn't intend to do anything" and was just venting.

Joshua L. moved for dismissal of both counts under Welfare and Institutions Code section 701.1, arguing that the evidence had not shown that Joshua L. intended the post to be understood as a threat, or that Joshua L. intended to convey the threat to E.V.  "This communication was posted on [Joshua L.'s] Facebook page.  So he's ranting or venting as he told the officers on his Facebook page about these kids that there's some dispute about.  He didn't tell [E.V.] to go look at the page.  There's no testimony that he e-mailed [E.V.] . . . There's no testimony that he directly threatened him."  The prosecutor responded that the post "specifically says:  'This goes out to [E.V.] and [Lloyd S.].'  And the first line of this Facebook posting says 'I'll put a bullet into both of your heads and go to jail for it.'  [¶] . . . Respectfully, the people disagree with counsel's description of Facebook social media as a diary.  This was posted on the internet on Facebook and was very direct."  The court denied the motion as to count 1, but dismissed count 2.

Joshua L. testified in his own defense.  He agreed that he had a Facebook page and answered yes when asked:  "Did you post some things to [E.V.] that he testified about earlier?"  Joshua L. and E.V. had been friends during the school year, hanging out together every day until they grew apart and "started changing."  Joshua L. used his Facebook page to "speak [his] mind and put words out there for everyone to see."  He had sent direct messages to someone before on Facebook.  When he posted "things about

4

[Lloyd S.] and [E.V.]," he "posted them only for [himself] to see. Kind of like on my profile. Not for them." He and E.V. were not friends on Facebook anymore at the time he posted the message in March 2012, because their relationship had gone sour. He never talked to E.V. about the posting. "It was not intentional for him to see." Joshua L. posted the message because he was angry at E.V.

On cross-examination, Joshua L. testified that he had about 120 Facebook friends. The March 2012 post addressed to E.V. and Lloyd S. was the only time he had said he would put a bullet in anyone's head. Joshua L. did not send the message directly to E.V. and Lloyd S., but as far as he knew, the post was delivered directly to E.V. and Lloyd S. One of the things that made Joshua L. angry enough to post the message was that E.V. and Lloyd S. "tried to jump [him] after school one day," although he never told that to the security guard or the deputy. He spoke to E.V. and Lloyd S. that day and they threatened to jump him, and Joshua L. posted the message an hour later. He had not told the security guard or the deputy that he was afraid, but they had not asked him why he made the post.

In closing, the prosecutor argued that Joshua L. "didn't send it one-on-one. He didn't send it by tagging to the specific victims. He posted it where at least 120 people would be able to see it." The post said, "'This goes out to [E.V.] and [Lloyd S.],'" and "[i]t's very clear that this message was intended to be a threat based on the totality of the message from the beginning to the end." Although E.V. minimized it, "he was afraid," as the security guard and the deputy had testified. The threat was serious: "This is not a diary, your honor. This is a social media site, and this minor made sure that as many of his friends as possible saw his posting."

Defense counsel argued that Facebook "is a diary of some sort where people can post," and Joshua L. "didn't post it on [the victims'] page, which he could have done or e-mailed them directly." E.V. stated that the message was "nonsense," and that he was upset and angry but not scared. The prosecutor rejoined that on closer questioning, E.V. said he was afraid of escalating tension or a confrontation. When Joshua L. posted on his

5

Facebook page, "[h]e was more than venting." Joshua L. made a clear and specific threat "directly communicated not only to everyone on his Facebook page, but directly to [E.V.]."

The court concluded that the prosecution had met its burden, and sustained the petition as to count 1. Joshua L.'s counsel then moved that the count be reduced to a misdemeanor, as Joshua L. "said he wasn't going to do this. He was just talking," and had no history of probation. The court commented that it did not believe Joshua L. was telling the truth when he testified, and the posting was a serious threat rather than venting. The court denied the motion to reduce the count to a misdemeanor.

## DISCUSSION

Joshua L. argues that there was insufficient evidence that he violated Penal Code section 422, that the disposition violated his right to free speech, that he received ineffective assistance of counsel, and that the juvenile court abused its discretion in denying his motion to reduce his offense to a misdemeanor.

## I. Substantial evidence supported the finding that Joshua L. threatened E.V.

Penal Code section 422, subdivision (a), penalizes "[a]ny person who willfully threatens to commit a crime which will result in death or great bodily injury to another person, with the specific intent that the statement, made verbally, in writing, or by means of an electronic communication device, is to be taken as a threat, even if there is no intent of actually carrying it out, which, on its face and under the circumstances in which it is made, is so unequivocal, unconditional, immediate, and specific as to convey to the person threatened, a gravity of purpose and an immediate prospect of execution of the threat, and thereby causes that person reasonably to be in sustained fear for his or her own safety . . . ." "In order to prove a violation of section 422, the prosecution must establish all of the following: (1) that the defendant 'willfully threaten[ed] to commit a crime which will result in death or great bodily injury to another person,' (2) that the defendant made the threat 'with the specific intent that the statement . . . is to be taken as a threat, even if there is no intent of actually carrying it out,' (3) that the threat–which

6

may be 'made verbally, in writing, or by means of an electronic communication device'– was 'on its face and under the circumstances in which it [was] made, . . . so unequivocal, unconditional, immediate, and specific as to convey to the person threatened, a gravity of purpose and an immediate prospect of execution of the threat,' (4) that the threat actually caused the person threatened 'to be in sustained fear for his or her own safety or for his or her immediate family's safety,' and (5) that the threatened person's fear was 'reasonabl[e]' under the circumstances. [Citation.]" (*People v. Toledo* (2001) 26 Cal.4th 221, 227–228.)

Joshua L. argues that the prosecution did not establish that he made the threat with the intent that E.V. take it as a threat; that the posting was so unequivocal that it conveyed to E.V. an immediate prospect of execution; and that the posting caused E.V. sustained fear for his safety. "[A]ppellant has a heavy burden in demonstrating that the evidence does not support the juvenile court findings." (*In re Ricky T.* (2001) 87 Cal.App.4th 1132, 1136.) We have reviewed the entire record, viewing the evidence in the light most favorable to the prosecution, and we conclude that a reasonable trier of fact could have found these elements of criminal threat beyond a reasonable doubt. (See *In re Roderick P.* (1972) 7 Cal.3d 801, 808–809.)

### A. *Joshua L.'s intent that E.V. take the Facebook post as a threat*

We examine Joshua L.'s post "on its face and under the circumstances in which it is made" to determine whether substantial evidence existed of Joshua L.'s specific intent that the post be taken as a threat. (Pen. Code, § 422, subd. (a).)

On its face, Joshua L.'s Facebook post is a threat of violence against E.V. The post stated that Joshua L. would be armed next time and would put a bullet in E.V.'s head, "rip a hole in your gut[,] pull everything out and stomp it out." The threat continued "next time [I] see you there will be blood on the floor," and states: "[T]his goes out to [E.V]."

Joshua L. argues that despite this language, the circumstances under which he made the threat show that he did not intend that E.V. ever see the threat. Joshua L. points

7

out that he posted it on his own Facebook page rather than send the post directly to E.V., who was no longer his Facebook friend.

We reject this argument. E.V. testified that he was on Facebook on his phone, went to Joshua L.'s profile, scrolled down and saw the threat. This is evidence that the threat was on Joshua L.'s profile for all to see, whether or not they were one of Joshua L.'s current Facebook friends. Although Joshua L. argues in his habeas petition that he thought the post was "private," there was no evidence that the threat was posted in a private manner that would be inaccessible to E.V. Joshua L.'s argument that Facebook privacy settings are complex and misleading is irrelevant, as there was no evidence at the adjudication, including during his testimony, that he attempted to use any privacy settings to make sure that E.V. did not see the post.**2** (See *Juror Number One v. Superior Court* (2012) 206 Cal.App.4th 854, 865 [where petitioner provided no specifics regarding the operation of Facebook or his contractual relationship with the website, extent to which his postings were disseminated to others was unclear and court could not determine his legitimate expectation of privacy].)

Joshua L.'s post said, "This goes out to [E.V.]." This is direct evidence that Joshua L. intended E.V. to see the threat. Joshua L. testified at the adjudication that he did not intend that E.V. see the post, but "'"[c]onflicts and even testimony [that] is subject to justifiable suspicion do not justify the reversal of a judgment, for it is the exclusive province of the trial judge or jury to determine the credibility of a witness and the truth or falsity of the facts upon which a determination depends. [Citation.]"'" (*People v. Manibusan* (2013) 58 Cal.4th 40, 43.) The trial court determined that Joshua L. was not credible, and was entitled to disbelieve Joshua L.'s testimony that he did not intend E.V. to see the post. Further, on cross-examination, Joshua L. testified that

---

**2** "Facebook users may decide to keep their profiles completely private, share them only with 'friends' or more expansively with 'friends of friends,' or disseminate them to the public at large. (*See* Facebook Help Center, http://www.facebook.com/help/privacy (last visited Aug. 10, 2012).)" (*United States v. Meregildo* (S.D.N.Y. 2012) 883 F.Supp.2d 523, 525.)

he did not send the post directly to E.V., but that he knew the post was delivered to E.V. and Joshua L.

The evidence of a defendant's specific intent "'is almost inevitably circumstantial, but circumstantial evidence is as sufficient as direct evidence to support a conviction.' [Citation.] . . . 'We "must accept logical inferences that the [finder of fact] might have drawn from the circumstantial evidence. [Citation.]" [Citation.]'" (*People v. Manibusan*, *supra*, 58 Cal.4th at p. 43.) Here, the circumstantial evidence was that E.V. was able to use his phone to access Joshua L.'s Facebook profile, scroll down, and read the posted threat. The trial court could draw the logical inference that the threat was posted on Joshua L.'s Facebook page in a manner easily accessible to E.V., supporting a conclusion that Joshua L. intended that E.V. see the threat. The circumstances reasonably justify the trial court's findings, and a reviewing court's conclusion the circumstances might also be reasonably reconciled with a contrary finding does not warrant reversal of the judgment. (*Id.* at p. 47.)

### B. *Unequivocal statements conveying an immediate prospect of execution*

The words of the post were unequivocal: "next time" Joshua L. would be armed, and "the next time [I] see you there will be blood on the floor." These unambiguous statements were not a "vague threat of retaliation without prospect of execution" like those in *In re Ricky T.*, *supra*, 87 Cal.App.4th at page 1138, where the court found insufficient evidence of a criminal threat when the minor cursed and said, "'I'm going to get you'" after a teacher accidentally hit him with a door. Nor was the threat in this case comparable to the minor's school project in *In re Ryan D.* (2002) 100 Cal.App.4th 854, 858, 863, a painting depicting the minor shooting a police officer who had patted him down, which the court concluded was an ambiguous statement turned in for credit rather than shown by the minor to the officer. Joshua L.'s words were explicit descriptions of violence that he would inflict on E.V. the next time he saw him.

Nevertheless, Joshua L. argues that his Facebook threat did not convey an immediate prospect of execution. Joshua L. points out that E.V. said nothing to Joshua L.

9

when he read the threat in class, instead reporting the threat to a school security guard, and that the circumstances conveyed no immediate prospect that Joshua L. would carry out his threat.

We disagree. Rather than confront Joshua L., E.V. informed a school security guard (Butchart), which shows that he desired the help of the authorities. He testified that he did so because he was already afraid there would be a fight, and after the posting he was more concerned. Butchart testified that E.V. showed him the post, was frightened that Joshua L. would do something to him on the way home, and was anxious and fidgeting with his hands. This is evidence that E.V. perceived an immediate prospect that Joshua L. would carry out the threat.

Joshua L. argues that there was a delay in the investigation until after spring break, and Joshua L. was not contacted until sometime afterwards. Butchart testified that when Joshua L. told him, school was closing for spring break, and Butchart notified the sheriff the first day that school resumed. Butchart's delay in notifying the sheriff until school was back in session is not evidence of E.V.'s perception regarding the immediacy of the threat. E.V. testified that he was afraid something would happen on the way home that day. Butchart did notify authorities immediately when school was back in session, which is when E.V. was again likely to encounter Joshua L.

### C.     *The victim's sustained fear for his own safety*

Joshua L. argues that there was insufficient evidence that E.V. was ever placed in sustained fear for his own safety. E.V.'s testimony on this issue was initially somewhat contradictory. E.V. testified that he was "kind of offended" by the post, which angered him. He stated he was not afraid, but also testified: "[B]ut at the same time you never know, and there's a possibility that it could happen. But I just tried to keep to myself that there's really nothing to be afraid of." E.V. reported the threat because the tension was already escalating and the post increased his concern; he "didn't want it to explode into something more," or a fight breaking out. He stated that while he did not think Joshua L. would carry out all the threats, he did believe Joshua L. could have, and he reported the

10

threat because he wanted someone to step in and "make sure there was no fighting or anything."

Burkhart's testimony that E.V. was scared that Joshua L. would do something to him on the way home and appeared nervous and upset is also evidence that E.V. was in fear. Further, Deputy Griffith testified that when he interviewed E.V. after spring break, E.V. told him he believed the threat was valid.

Any conflict in the evidence does not require that we reverse the judgment. The majority of E.V.'s testimony was that he was worried and believed it was possible that Joshua L. would act on the threat. The trial court was entitled to accept some portions of E.V.'s testimony while rejecting others. (*People v. Allen* (1985) 165 Cal.App.3d 616, 623.) Viewing the testimony in the light most favorable to the judgment, the trial court could have concluded that E.V. was in sustained fear.

## II. The disposition did not violate Joshua L.'s constitutional right to free speech.

Joshua L. argues that his constitutional rights were violated when the trial court sustained the petition, because his Facebook post was protected speech under the First Amendment. We apply independent review to this claim, to distinguish a criminal threat from constitutionally protected speech. (*In re George T.* (2004) 33 Cal.4th 620, 634.) This is not de novo review. "Because the trier of fact is in a superior position to observe the demeanor of witnesses, credibility determinations are not subject to independent review, nor are findings of fact that are not relevant to the First Amendment issue. [Citations.] . . . [U]nder independent review, an appellate court exercises its independent judgment to determine whether the facts satisfy the rule of law. Accordingly, we will defer to the juvenile court's credibility determinations, but will ""'make an independent examination of the whole record'"" [citation], including a review of the constitutionally relevant facts "'de novo, independently of any previous determinations by the [juvenile court]'" [citations] to determine whether minor's poem was a criminal threat entitled to no First Amendment protection." (*Ibid.*) "[T]he words actually used must constitute a threat in light of the surrounding circumstances." (*Id.* at p. 636.)

11

The First Amendment does not protect "'[t]rue threats,' [which] encompass those statements where the speaker means to communicate a serious expression of an intent to commit an act of unlawful violence to a particular individual or group of individuals." (*Virginia v. Black* (2003) 538 U.S. 343, 359 [123 S.Ct. 1536, 155 L.Ed.2d 535].) "The speaker need not intend to carry out the threat"; prohibiting "true threats" protects individuals from fear of violence and the disruption engendered by fear, as well as the possibility that the threatened violence will occur. (*Id.* at p. 360.)

Our independent review of the record shows that Joshua L.'s post was a true threat. Joshua L. addressed E.V. by name, stated, "[I']ll put a bullet into both of your heads," stated that he would be armed the next time, would eviscerate E.V., and would leave "blood on the floor." This was a serious and unequivocal expression of an intent to commit unlawful violence against E.V., whom Joshua L. targeted with "this goes out to [E.V.]." The record also shows that the threat was posted on Joshua L.'s easily accessible Facebook profile, and we defer to the trial court's decision to disbelieve Joshua L.'s testimony that he did not intend E.V. to see it. E.V. reacted to the possibility that the threatened violence would occur by notifying a school security guard, and testified that he wanted protection from any confrontation.

The threat in this case is not a poem, whose ambiguous language "may mean different things to different readers," in a case where "there was no history of animosity or conflict between the students." (*In re George T.*, *supra*, 33 Cal.4th at pp. 636–637.) The threat was vividly specific, and Joshua L. and E.V. had had a falling out. Both the language of the threat and the surrounding circumstances support the conclusion that sustaining the petition did not violate Joshua L.'s First Amendment rights.

## III. Counsel was not ineffective.

In his direct appeal and his habeas petition, Joshua L. argues that his counsel was ineffective for "failing to clarify appellant's one word response to a string of confusing colloquia on the record." On cross-examination, the prosecutor asked Joshua L. if he sent the message directly to E.V. or posted anything to indicate that he was just kidding or

12

venting, and Joshua L. answered "[n]o." Then the prosecutor asked: "So, as far as you knew, the post you put on your Facebook page with your 120 friends addressed to [E.V.] . . . was delivered to [E.V.] . . . . Would that be fair to say?" Joshua L. asked, "That was directly to [E.V.] . . . ?," and the prosecutor answered, "Yes." Defense counsel objected that the question had been asked and answered, and the court denied the objection. Joshua L. then answered, "Yes."

Joshua L. argues that this answer contradicted his statements that he did not send the post directly to E.V., and that therefore his counsel should have clarified this. Joshua L. attaches a declaration to his habeas petition in which he states that he has read the reporter's transcript but remembers the question differently. According to Joshua L., he was "asked whether, as far as I knew, the post which I had put on my Facebook page would *not* be delivered to E.V. and [Lloyd] S. I thought, when I answered 'yes,' that I was testifying that, as far as I knew, the post which I had put on my Facebook page would *not* be delivered to E.V. and [Lloyd] S." He also states that he did not believe that members of the public who were not his Facebook friends could read his posts.

Joshua L's declaration is inconsistent with his argument that counsel was ineffective. If the question to which he answered "yes" was as he describes it (with a meaning directly opposite to the question as reflected in the transcript), defense counsel did not err in failing to object and clarify his answer. In any event, the report of the official court reporter, when transcribed and certified as is the transcript in this case, is prima facie evidence of the testimony and proceedings. (Code Civ. Proc., § 273, subd. (a); see *People v. Huggins* (2006) 38 Cal.4th 175, 190 ["we rely upon the court reporter to accurately record the words spoken in court"].)

A successful claim of ineffective assistance requires inadequate performance by counsel and resulting prejudice. (*Strickland v. Washington* (1984) 466 U.S. 668, 688, 690–694 [104 S.Ct. 2052, 80 L.Ed.2d 674].) Counsel objected to the question whether the post had been delivered to E.V. as asked and answered, and the court denied the objection. Even assuming that after the court denied counsel's objection, counsel should

13

have somehow clarified Joshua L.'s affirmative answer, we see no prejudice as a result. In closing argument, the prosecutor did not argue that Joshua L. delivered the post to E.V. Instead, the prosecutor acknowledged that Joshua L. did *not* "send it one-on-one. He didn't send it by tagging to the specific victims. He posted it where at least 120 people would be able to see it." The prosecutor later argued that the threat was directly communicated to everyone on Joshua L.'s Facebook page and "directly to [E.V.] and Lloyd [S.]," but that was in the context of whether the language was a direct and specific threat, not whether Joshua L. sent or otherwise delivered the threat specifically to its targets. Joshua L. has not established a reasonable probability that if counsel had clarified his answer, the outcome of the adjudication would have been different. (*Id.* at pp. 696–697.)

**IV.    The trial court did not abuse its discretion in declaring the offense a felony.**

Joshua L. argues that the trial judge should have declared the disposition on count 1 to be a misdemeanor. A criminal threat in violation of Penal Code section 422 is a "wobbler" offense which if committed by an adult, may be charged and punished as a felony or a misdemeanor. (Pen. Code, § 422, subd. (a).) Welfare and Institutions Code section 702 requires the juvenile court to declare expressly whether such an offense is a felony or a misdemeanor. (*In re Manzy W.* (1997) 14 Cal.4th 1199, 1207.) The trial court did so.

The trial court's exercise of its discretion whether to reduce a wobbler offense charged as a felony to a misdemeanor is "an intensely fact-bound inquiry taking all relevant factors, including the defendant's criminal past and public safety, into due consideration; and the record must so reflect." (*People v. Superior Court (Alvarez)* (1997) 14 Cal.4th 968, 981–982.) The court should consider the nature of the offense, the defendant's appreciation of and attitude toward the offense, or his traits and character as evidenced by his demeanor and behavior at trial. The defendant must demonstrate that the court's decision to deny his motion to reduce was irrational or arbitrary. (*Id.* at pp. 977–978.)

14

The trial court heard argument from defense counsel and from the prosecutor on the motion to reduce, and stated: "Based on the testimony I heard from [Joshua L.], I don't think he was telling the truth to be quite honest, and I do agree with [the prosecutor]. I think there's a pretty clear history [that Joshua L. and E.V. had been friends until a month earlier]. There's probably a lot more than we do know, but I take it very seriously that these threats—yes, we can try to minimize them and act like it's just venting. They're significant threats. They're very serious. There's also a lot of damage and harm that can come from this type of behavior, and I don't think based on the circumstances and based on what I've heard that would warrant the reduction to a misdemeanor."

The juvenile court considered the serious nature of the threat, stated that it believed Joshua L. was not telling the truth, and considered the harm done by such serious threats, in the course of exercising its discretion. Joshua L. has not demonstrated that the court acted irrationally or arbitrarily in denying his motion to reduce the offense to a misdemeanor.

## DISPOSITION

The juvenile court's order is affirmed.  The petition for writ of habeas corpus is denied.

NOT TO BE PUBLISHED.


JOHNSON, J.


We concur:


CHANEY, Acting P. J.


MILLER, J.*

---

* Judge of the Los Angeles Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.

16