Filed 6/16/15  P. v. Harte CA4/3

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FOURTH APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>        v.<br><br>DANIEL PATRICK HARTE,<br><br>    Defendant and Appellant. | G049871<br><br>(Super. Ct. No. 13NF2382)<br><br>O P I N I O N |

Appeal from a judgment of the Superior Court of Orange County, Sheila F. Hanson, Judge.  Affirmed.

Gail Ganaja, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Gerald A. Engler, Chief Assistant Attorney General, Julie L. Garland, Assistant Attorney General, Peter Quon, Jr., and Raquel M. Gonzalez, Deputy Attorneys General, for Plaintiff and Respondent.

\*          \*          \*

A jury convicted Daniel Harte of two counts of making criminal threats (Pen. Code, § 422; all statutory citations are to the Penal Code). Harte contends the trial court prejudicially erred by failing to instruct the jury on the lesser included offense of attempted criminal threats because there was substantial evidence the victim was not in sustained fear. For the reasons discussed below, we affirm.

I

FACTUAL AND PROCEDURAL BACKGROUND

Jeffrey Stanley lived in Yorba Linda with his wife Kerry and their four children. Stanley and Kerry had been married 28 years at the time of trial. Stanley had known Harte, Kerry's brother, for approximately 35 years and suspected he had mental health issues. Stanley had only seen Harte occasionally over the years because Harte had been in custody for a significant time.

On June 18, 2013, Harte left a voicemail on Stanley's phone. Harte identified himself by name, social security number, and driver's license number. The message began with "hey punk, mother fucker, it's time to get yours mother fucker, pay the pied piper, you hear me mother fucker, I'm getting you." He proceeded to call Stanley "a snitch ass mother fucker" and made it clear that he knew where Stanley lived, repeating "I'm getting you" numerous times. Harte said in two days he would be in Yorba Linda and that Stanley could notify "the fucking parole department and you notify Yorba, you notify Orange . . . ." Harte also identified himself as a part of the Aryan brotherhood and the Irish Republican brotherhood. He concluded the message with "you better be fucking ready, cause we're ready . . . we're getting you . . . you hear me."

Six days later, Harte phoned Stanley again and left another message. Harte accused Stanley of reporting him to his parole officer and stated he was "telling all the home boys" about Stanley, "[e]veryone in Orange County Jail knows all about you" and "the way you're going around and running your mouth." Harte said, "I'm just letting you know, that everybody knows about you, partner, they know about you and your white

2

utility vehicle." He concluded, "you won't fucking do a fucking thing but run your fucking mouth . . . [l]et me see you on a fucking street punk and put your fucking mitts up  . . . ."

Stanley testified he interpreted the voicemails as threats, and he feared for the safety of himself and his family after each of the messages. Stanley did not contact Harte's parole officer personally to report the two calls, but his wife attempted to do so. Stanley testified to being in fear because of Harte's criminal history, the time Harte spent in prison, the tone of Harte's voice, Harte's knowledge of where Stanley lived, and Harte's continued use of "we," suggesting there may have been a group of individuals with Harte. He also stated he had feared Harte before Harte's phone calls because Harte lunged at him during an altercation 15 years earlier.

Following a trial in January 2014, the jury convicted Harte as noted above. In March 2014, the trial court sentenced Harte to nine years in prison, comprised of a 32-month term (the 16-month low term doubled under the Three Strikes law because of a 1989 prior robbery conviction) for the criminal threats conviction charged as count 1, a consecutive 16-month term (a one-third midterm doubled) for the second criminal threats offense (count 2), plus a five-year consecutive term (§ 667, subd. (a)) for a prior robbery conviction.

## II

## DISCUSSION

*The Trial Court Did Not Err by Failing to Instruct on Attempted Criminal Threats*

Harte contends the trial court erred by failing to provide the jury with an instruction on attempted criminal threats. He argues there was substantial evidence Stanley was not actually in sustained fear. "We apply the independent or de novo standard of review to the failure by the trial court to instruct on an assertedly lesser included offense." (*People v. Cole* (2004) 33 Cal.4th 1158, 1218.) Finding no

substantial evidence for the jury to conclude Harte was guilty of the lesser offense, but not guilty of the charged offense (making a criminal threat), we reject Harte's contention.

"'"It is settled that in criminal cases, even in the absence of a request, the trial court must instruct on the general principles of law relevant to the issues raised by the evidence. [Citations.] The general principles of law governing the case are those principles closely and openly connected with the facts before the court, and which are necessary for the jury's understanding of the case." [Citation.] That obligation has been held to include giving instructions on lesser included offenses when the evidence raises a question as to whether all of the elements of the charged offense were present . . . .'"'" (*People v. Breverman* (1998) 19 Cal.4th 142, 154.)

The trial court has no duty to instruct on lesser included offenses that are not supported by substantial evidence. (*People v. Breverman, supra,* 19 Cal.4th at p. 162.) The duty to instruct only arises if there is evidence "'substantial enough to merit consideration' by the jury." (*Ibid.*) "'Substantial evidence' in this context is '"evidence from which a jury composed of reasonable [persons] could . . . conclude[ ]'" that the lesser offense, but not the greater, was committed. [Citations.]" (*Ibid.*) "In deciding whether evidence is 'substantial' in this context, a court determines only its bare legal sufficiency, not its weight." (*Id.* at p. 177.)

To prove a violation of section 422, the prosecution must establish: "(1) that the defendant 'willfully threaten[ed] to commit a crime which will result in death or great bodily injury to another person,' (2) that the defendant made the threat 'with the specific intent that the statement . . . is to be taken as a threat, even if there is no intent of actually carrying it out,' (3) that the threat – which may be 'made verbally, in writing, or by means of an electronic communication device' – was 'on its face and under the circumstances in which it [was] made, . . . so unequivocal, unconditional, immediate, and specific as to convey to the person threatened, a gravity of purpose and an immediate prospect of execution of the threat,' (4) *that the threat actually caused the person*

4

*threatened 'to be in sustained fear for his or her own safety or for his or her immediate family's safety,'* and (5) that the threatened person's fear was 'reasonabl[e]' under the circumstances." (*People v. Toledo* (2001) 26 Cal.4th 221, 227-228, italics added.) Sustained fear means "a period of time that extends beyond what is momentary, fleeting, or transitory." (*People v. Allen* (1995) 33 Cal.App.4th 1149, 1156; *In re Ricky T.* (2001) 87 Cal.App.4th 1132, 1140.) "[I]f a defendant . . . makes a sufficient threat that is received and understood by the threatened person, but . . . the threat does not *actually* cause the threatened person to be in sustained fear for his or her safety . . . the defendant properly may be found to have committed the offense of attempted criminal threat." (*People v. Toledo, supra,* 26 Cal.4th at p. 231.)

The prosecutor initially requested an instruction on the lesser offense of attempted criminal threat, but the trial court concluded there was "no evidence supporting an attempt versus a completed act." Defense counsel agreed, and no instruction was provided.

Relevant evidence presented at trial included recordings of Harte's voicemails to Stanley, Stanley's testimony about his fear after each of the voicemails, and his preexisting fear of Harte because of an altercation in which Harte had tried to attack him, testimony regarding Kerry's calls to Harte's parole officer, and Harte's statements of affiliation with a criminal gang.

Harte emphasizes Stanley did not immediately report the voicemails to the police, and argues this indicates Stanley was not actually in sustained fear. Harte ignores the fact that Stanley's wife reached out to Harte's parole officer after each of the voicemails. In our view, failure to notify the police does not constitute substantial evidence that Stanley was not in sustained fear when Stanley took action to have his wife contact parole authorities. Stanley testified he felt contacting Harte's parole officer "was the best way to ensure the safety of [his] family."

5

Harte also cites Stanley's contradictory trial testimony about when he changed his driving pattern home from work as substantial evidence he was not in sustained fear. Stanley testified on direct examination he did not "really" change his route home until after Harte made two later threats that are not the subject of this appeal. But Stanley testified on cross-examination he changed his way to work after the voicemails. Defense counsel presented Stanley with a copy of his testimony from the preliminary hearing, and the following exchange occurred: "[Q]: Would you agree with me that when you testified on a previous date that you said that you actually did not change your mode of travel or the way that you got from work after receiving the voicemails?[1] [¶] [A]: I don't recall it, but, obviously, there's a change in the words, so - - [¶] [Q]: I'll just ask you to clarify what do you mean by there's a change in the words? [¶] [A]: You're saying that I didn't change my direction, and I say I did, so I don't know what else to tell you. [¶] . . . [¶] [Q]: So did you change your way to work after receiving the voicemails? [¶] [A]: I feel I did. Yes, I did."

Stanley testified he was in sustained fear because of Harte's alleged affiliations, their past encounter, Harte's knowledge of Stanley's home address and the threatening language of the messages. The only evidence before the jury was that Stanley changed his way to work after receiving the voicemails. But even assuming Stanley did not change his driving behavior immediately after the threats, his inaction does not undermine his testimony he was in sustained fear. He testified Harte's threats caused him sustained fear for both his own safety and that of his family. A change (or lack thereof) in Stanley's driving pattern may be some evidence of concern for his personal safety, but has no bearing on his sustained fear for the safety of his family.

---

1  At the preliminary hearing Stanley testified to changes in his behavior after the first and second threatening phone calls separately. Stanley testified he changed his route home after the first threatening voicemail, but did not change the time he left for work, his mode of travel or anything else after the second voicemail.

6

Harte knew where Stanley and his family resided.  The statutory element of subjective sustained fear applies to both personal safety and that of the threatened individual's immediate family.  No contradictory evidence was presented regarding Stanley's testimony.

Under Harte's rationale, an alleged victim's failure to take all possible precautions would constitute substantial evidence the victim was not in sustained fear.  Thus, a victim's failure to relocate or install an alarm system would require an instruction on the lesser included offense of attempted criminal threat.  Whether the victim's failure to take certain precautions warrants an instruction on the lesser offense depends on the unique facts of each case.  Here, Harte speculates Stanley did not take additional actions because he was not in sustained fear, but "'[s]peculation is an insufficient basis upon which to require the trial court to give an instruction on a lesser included offense.'" (*People v. Sakarias* (2000) 22 Cal.4th 596, 620.)  The trial court did not err in declining to provide an instruction on attempted criminal threats.

## III

### DISPOSITION

The judgment is affirmed.


ARONSON, J.

WE CONCUR:


O'LEARY, P. J.


IKOLA, J.

7