[No. A090983. First Dist., Div. Four. Mar. 19, 2001.]

In re RICKY T., a Person Coming Under the Juvenile Court Law.
THE PEOPLE, Plaintiff and Respondent, v.
RICKY T., Defendant and Appellant.

**COUNSEL**

Jack Walker, under appointment by the Court of Appeal, for Defendant and Appellant.

Bill Lockyer, Attorney General, David P. Druliner, Chief Assistant Attorney General, Ronald A. Bass, Assistant Attorney General, Eric D. Share and Martin S. Kaye, Deputy Attorneys General, for Plaintiff and Respondent.

**OPINION**

**CHIANTELLI, J.\***—On February 2, 2000, a Welfare and Institutions Code section 602 petition was filed against appellant Ricky T. alleging that he made a felonious terrorist threat (Pen. Code,[1] § 422) and threatened a teacher with the intent of preventing him from performing his duties (§ 71).

---

\*Judge of the San Francisco Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.

[1]All subsequent statutory references are to the Penal Code.

On April 26, 2000, in a jurisdictional hearing, the parties stipulated that the matter be submitted on two police reports.[2] The stipulation further provided that the People would not seek a felony finding and that appellant would waive any hearsay objections to the police reports. After hearing argument from the parties, the juvenile court found that appellant committed a misdemeanor terrorist threat in violation of section 422. The court did not sustain the section 71 count.

The court adjudged appellant a ward of the court. The court ordered appellant incarcerated in the county juvenile facility for 30 days, suspended its order and placed appellant on probation with his father.

Appellant contends that the record does not support the juvenile court's finding that appellant committed a violation of section 422. Because of the paucity of facts in the two police reports, we agree and reverse.

## STATEMENT OF FACTS

On May 6, 1999, appellant, a 16-year-old student, left Redwood High School teacher Roger Heathcote's class to use the restroom. When appellant returned, he found the classroom door locked and pounded on it. Heathcote opened the door, which opened outwardly, hitting appellant with it.[3]

Appellant became angry, cursed Heathcote and threatened him, saying, "I'm going to get you." Heathcote felt threatened and sent appellant to the school office. Heathcote said he felt physically threatened by appellant; however, he said appellant did not make a specific threat or further the act of aggression. Appellant was suspended for five days for the threat.

Officer Steaveson interviewed appellant at the school dean's office the following day. Appellant told Officer Steaveson that he was involved in a verbal altercation with Heathcote because he felt "disrespected by the door hitting him in the head." He admitted speaking angrily, but denied threatening Heathcote. Appellant also admitted "getting in [Heathcote's] face," but did not mean to sound threatening. He said that his actions were not appropriate and he apologized for the incident.

---

[2]Unlike a "slow plea"—a bargained-for submission on police reports or a preliminary transcript that is tantamount to a guilty plea for a promised sentence (*Bunnell v. Superior Court* (1975) 13 Cal.3d 592, 602 & fn. 4 [119 Cal.Rptr. 302, 531 P.2d 1086]), appellant in the present case argued insufficiency of the evidence as a matter of law.

[3]Heathcote, in his account, said the door "might have" struck appellant. Appellant said the door hit him in the head. A day later, Officer Steaveson noticed no visible injuries to appellant's head.

On May 14, 1999, one week later, Officer Steaveson contacted appellant by telephone and advised him of his *Miranda*[4] rights. Appellant waived his rights and said that on the day of the incident, he told Heathcote "I'm going to kick your ass." He added, however, that he never made any physical movements or gestures toward Heathcote to further the threat.

## DISCUSSION

 Appellant's sole contention on appeal is that there is insufficient evidence to support the finding that he uttered a terrorist threat. This court is mindful that in considering a claim of insufficiency of the evidence, appellant has a heavy burden in demonstrating that the evidence does not support the juvenile court findings. (*In re Roderick P.* (1972) 7 Cal.3d 801, 808-809 [103 Cal.Rptr. 425, 500 P.2d 1].) An appellate court must review the whole record in the light most favorable to the judgment in order to determine whether it discloses substantial evidence that a reasonable trier of fact could find the essential elements of the crime beyond a reasonable doubt. (*People v. Marshall* (1997) 15 Cal.4th 1, 34 [61 Cal.Rptr.2d 84, 931 P.2d 262]; *People v. Johnson* (1980) 26 Cal.3d 557, 578 [162 Cal.Rptr. 431, 606 P.2d 738, 16 A.L.R.4th 1255].) Even under this stringent standard of review, the record of two police reports does not support a finding that appellant violated section 422.

In order to sustain a finding that appellant made a terrorist threat in violation of section 422, the People were required to show: (1) appellant willfully threatened to commit a crime that would result in death or great bodily injury; (2) he made the threat with the specific intent that it be taken as a threat; (3) the threat, on its face and under the circumstances in which it was made, was so unequivocal, unconditional, immediate and specific as to convey to the person threatened a gravity of purpose and an immediate prospect of execution of the threat; and (4) the threat caused the person threatened reasonably to be in sustained fear for his own safety. (§ 422;[5] *People v. Melhado* (1998) 60 Cal.App.4th 1529, 1536 [70 Cal.Rptr.2d 878].)

---

[4]*Miranda v. Arizona* (1966) 384 U.S. 436 [86 S.Ct. 1602, 16 L.Ed.2d 694, 10 A.L.R.3d 974].

[5]Section 422 provides, in pertinent part: "Any person who willfully threatens to commit a crime which will result in death or great bodily injury to another person, with the specific intent that the statement, made verbally, in writing, or by means of an electronic communication device, is to be taken as a threat, even if there is no intent of actually carrying it out, which, on its face and under the circumstances in which it is made, is so unequivocal, unconditional, immediate, and specific as to convey to the person threatened, a gravity of purpose and an immediate prospect of execution of the threat, and thereby causes that person reasonably to be in sustained fear for his or her own safety . . . , shall be punished by imprisonment in the county jail not to exceed one year, or by imprisonment in the state prison."

Appellant concedes that the evidence supports the first two elements of the offense but argues that there is insufficient evidence to establish that the threat was unequivocal and immediate or that it caused Heathcote to be in sustained fear for his safety.

*Nature of the Threat*

Section 422 requires that the threat be "*so* unequivocal, unconditional, immediate, and specific [that it] convey . . . a gravity of purpose and an immediate prospect of execution of the threat . . . ." (Italics added.) It is clear that the nature of the threat cannot be determined only at face value. Section 422 demands that the purported threat be examined "on its face and under the circumstances in which it was made." The surrounding circumstances must be examined to determine if the threat is real and genuine, a true threat. (*People v. Bolin* (1998) 18 Cal.4th 297, 339-340 [75 Cal.Rptr.2d 412, 956 P.2d 374] (*Bolin*); *United States v. Kelner* (2d Cir. 1976) 534 F.2d 1020, 1026-1027.)

The police reports state that appellant became angry at Heathcote for accidentally hitting him with the door when he opened it, cursing and stating he was going to get Heathcote. Appellant told the officer he did not mean to sound threatening, but did admit getting in Heathcote's face and saying he would "kick [his] ass."

Respondent relies too much on judging a threat solely on the words spoken.[6] It is clear by case law that threats are judged in their context. (*Bolin, supra,* 18 Cal.4th at pp. 339-340; *People v. Brooks* (1994) 26 Cal.App.4th 142, 149 [31 Cal.Rptr.2d 283] [conditional threats are true threats if their context reasonably conveys to victims that they are intended].) By this standard, appellant's "threats" lack credibility as indications of serious, deliberate statements of purpose. The lack of surrounding circumstances information is striking. There was no immediacy to the threat. Sending appellant to the school office did not establish that the threat was "so"[7] immediate. "The use of the word 'so' in [section 422] indicates that unequivocality, unconditionality, immediacy and specificity are not absolutely mandated, but must be sufficiently present in the threat and surrounding circumstances to convey gravity of purpose and immediate prospect of execution to the victim." (*People v. Stanfield* (1995) 32 Cal.App.4th 1152, 1157 [38 Cal.Rptr.2d 328] (*Stanfield*).)

---

[6]"No one means all he says, and yet very few say all they mean, for words are slippery and thought is viscous." (Adams, The Education of Henry Adams (1918) p. 451.)

[7]"[S]o" means "[t]o a great extent; to such an evident degree." (American Heritage Dict. (2d college ed. 1985) p. 1159, col. 1.)

Here, the police were not called until the following day. Appellant was then interviewed in the school principal's office. That execution of the threat was not so immediate is further evidenced by the fact that the police did not again interview appellant until one week later.

Having no circumstances to corroborate a true threat, respondent claims the record contains the legal minimum required to sustain the finding. But the remark "I'm going to get you" is ambiguous on its face and no more than a vague threat of retaliation without prospect of execution. (*People v. Martinez* (1997) 53 Cal.App.4th 1212, 1218 [62 Cal.Rptr.2d 303] (*Martinez*).) Appellant's "kick your ass" and cursing statements were made in response to his accident with the door.

In contrast to other cases upholding section 422 findings, there was no evidence in this case to suggest that appellant and Heathcote had any prior history of disagreements, or that either had previously quarreled, or addressed contentious, hostile, or offensive remarks to the other. (See, e.g., *People v. Mendoza* (1997) 59 Cal.App.4th 1333, 1341-1342 [69 Cal.Rptr.2d 728] (*Mendoza*) [the use of surrounding circumstances—defendant and the victim had been associated with a gang and defendant knew the victim had testified at a trial regarding a gang member—changed seemingly nonspecific words into a threat]; *Martinez, supra,* 53 Cal.App.4th at pp. 1214-1216 [defendant and one of the victims were involved in a stormy relationship]; *People v. Allen* (1995) 33 Cal.App.4th 1149, 1151-1154 [40 Cal.Rptr.2d 7] (*Allen*) [same]; *People v. McCray* (1997) 58 Cal.App.4th 159, 172 [67 Cal.Rptr.2d 872] [defendant's past violence toward the victim was relevant to the determination of whether defendant made a terrorist threat]; *Stanfield, supra,* 32 Cal.App.4th at pp. 1154-1157 [attorney's emotionally disturbed ex-client was properly convicted for terrorist threats, even though the threat was grammatically conditional, because circumstances revealed other threats and defendant's possession of the means of accomplishing the threat].) Nor was there evidence that a physical confrontation was actually imminent. (See *People v. Lepolo* (1997) 55 Cal.App.4th 85, 88-90 [63 Cal.Rptr.2d 735] [defendant raised a machete over his head, pointed to a police officer, and said " 'I want that officer' "].)

Appellant's intemperate, rude, and insolent remarks hardly suggest any gravity of purpose; there was no evidence offered that appellant's angry words were accompanied by any show of physical violence—nothing indicating any pushing or shoving or other close-up physical confrontation. Heathcote told Officer Steaveson that appellant had "not . . . further[ed] the act of aggression." There is no evidence that appellant exhibited a physical show of force, displayed his fists, damaged any property, or attempted to batter Heathcote or anyone else.

If surrounding circumstances within the meaning of section 422 can show whether a terrorist threat was made, absence of circumstances can also show that a terrorist threat was not made within the meaning of section 422. Here, there was no evidence of any circumstances occurring *after* appellant's "threats" which would further a finding of a terrorist threat.

The cases relied upon by respondent, therefore, are readily distinguishable. In *Martinez, supra,* 53 Cal.App.4th at pages 1218 and 1221, although defendant's words to his girlfriend's supervisor " 'I'm going to get you,' " " 'I'll get back to you' " and " 'I'll get you' " standing alone may not have conveyed a threat to commit a crime that would result in death or great bodily injury, the surrounding circumstances after the statement—defendant set fire to the building where the supervisor worked, and the fire was discovered after the supervisor reported to work—met the requirement that defendant make a grave threat to another's personal safety. In *Mendoza, supra,* 59 Cal.App.4th at page 1341, the circumstances demonstrated that defendant intended his words to be taken as a threat; his fellow gang members immediately followed up on his threats to injure someone who " 'ratted' " on another gang member by parking in front of the victim's house and honking to get her attention.

Moreover, here, the court acquitted appellant of the section 71 charge.[8] In so doing, the court did not find any evidence proving that appellant entertained the requisite specific intent of interfering with the performance of Heathcote's official duties, or that his outburst had the requisite effect of creating a reasonable belief the threat could be carried out.

Like section 422, section 71 is a specific intent crime. (*People v. Hopkins* (1983) 149 Cal.App.3d 36, 41 [196 Cal.Rptr. 609].) While section 71 does not duplicate the "gravity" and "immedia[cy]" language of section 422, it proscribes threats the recipient reasonably believes could be accomplished. Here, the circumstances documented in the two police reports did not support a conclusion that appellant's "threat" was a true threat within the meaning of section 422.

*Sustained Fear*

■ Section 422 also requires that the threat be such as to cause a reasonable person to be in *sustained fear* for his personal safety. The statute

---

[8]Section 71 provides, in pertinent part: "Every person who, with intent to cause, attempts to cause, or causes, any officer or employee of any public or private educational institution or any public officer or employee to do, or refrain from doing, any act in the performance of his duties, by means of a threat, directly communicated to such person, to inflict an unlawful injury upon any person or property, and it reasonably appears to the recipient of the threat that such threat could be carried out, is guilty of a public offense . . . ."

is specific as to what actions and reactions fall within its definition of a terrorist threat. The phrase to "cause[] that person reasonably to be in sustained fear for his or her own safety" has a subjective and an objective component. A victim must actually be in sustained fear, and the sustained fear must also be reasonable under the circumstances.

Unlike the crime of robbery where the word "fear" does not necessarily connote intimidation or fear as it means apprehension,[9] the term "sustained fear" is defined by *Allen, supra,* 33 Cal.App.4th at page 1156 as a period of time "that extends beyond what is momentary, fleeting, or transitory." In concluding that the statutory element of sustained fear was met, the *Allen* court relied on evidence indicating that the victim had knowledge of the defendant's prior threatening conduct and had reported this conduct to the police on several occasions. No such evidence exists in this case. Whatever emotion—fear, intimidation, or apprehension—Heathcote felt during the moment of the verbal encounter, there was nothing to indicate that the fear was more than fleeting or transitory. Indeed, Heathcote admitted the threat was not specific. This court rejects respondent's suggestion that even momentary fear can support a finding of sustained fear within the meaning of section 422. Clearly, if any experience of fear constitutes a "sustained" experience, then the term is superfluous. Heathcote told Officer Steaveson that he "felt threatened," and that he ordered appellant to report to the school office. The record, however, indicates that the police were not notified until the day after the incident. Apparently, fear did not exist beyond the moments of the encounter. Rather than taking advantage of Heathcote's fear, appellant followed his directive and placed himself in the school office, where he returned the next day for Officer Steaveson's interview.

This court disagrees with respondent that the fact that Heathcote sent appellant to the school office establishes sustained fear. Heathcote's response, far from evincing a reasonable sustained fear, was an appropriate, necessary response to a disruptive classroom incident. It was Heathcote's response that called appellant's outburst to the attention of the school office and effected a five-day suspension. Appellant uttered intemperate, disrespectful remarks to Heathcote in the presence of a classroom full of students. It is obvious that this mouthing off or posturing was not designed to coerce Heathcote to do or not to do anything. There is no evidence that Heathcote felt fear beyond the time of the angry utterances.

In a final roundhouse argument, respondent submits that it is not the time the fear is endured but that it is, in fact, suffered or established. Respondent

---

[9]A victim too courageous to be frightened or intimidated may, in spite of contrary testimony, be held to be in "fear" because the victim did what the robber demanded. (*People v. Renteria* (1964) 61 Cal.2d 497, 498-499 [39 Cal.Rptr. 213, 393 P.2d 413]; *People v. Borra* (1932) 123 Cal.App. 482, 484-485 [11 P.2d 403].)

suggests we substitute the word "endured," "suffered," "undergone," or "established" for the word "sustained." However, the phrasing of section 422—"causes the person reasonably to be in sustained fear"—does not accommodate respondent's view of the meaning of the word sustain.

Respondent's view is unsupported by any cited authority. Although in *Allen, supra*, 33 Cal.App.4th at page 1156, 15 minutes sufficed to establish sustained fear, the evidence there, unlike here, showed that the defendant followed up on his threats to injure the victim. Even respondent's hypothetical of a victim collapsing into unconsciousness from a massive heart attack because of a threat from an armed assailant is more probative of an indirect battery—or if the victim died from fright, a criminal homicide—rather than "sustained fear." (Perkins & Boyce, Criminal Law (3d ed. 1982) p. 822.) In sum, there is nothing in the record here to support a finding of sustained fear.

It is this court's opinion that section 422 was not enacted to punish an angry adolescent's utterances, unless they otherwise qualify as terrorist threats under that statute. Appellant's statement was an emotional response to an accident rather than a death threat that induced sustained fear. Although what appellant did was wrong, we are hesitant to change this school confrontation between a student and a teacher to a terrorist threat. Students who misbehave should be taught a lesson, but not, as in this case, a penal one.

### DISPOSITION

For all the reasons stated above, the judgment is reversed.

Reardon, Acting P. J., and Kay, J., concurred.

A petition for a rehearing was denied April 5, 2001.