Filed 8/25/2016

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION SIX

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>v.<br><br>SERGIUS APOSTOLOS ORLOFF,<br><br>    Defendant and Appellant. | 2d Crim. No. B266933<br>(Super. Ct. Nos. 2013020074, 2014008755)<br>(Ventura County) |

A person confined to a wheelchair is capable of making a criminal threat. Here the threats were directed to a peace officer and a pharmacy manager. Similar prior threats were directed to workers' compensation judges. We have compassion for a person confined to a wheelchair. However, pain and suffering does not give license to threaten people.

Sergius Apostolos Orloff appeals from the judgment entered after a jury had convicted him of making a criminal threat (Pen. Code, § 422)[1] and attempting, by means of a threat, to deter an executive officer from performing his duties. (§ 69.) The trial court found true allegations that he had been convicted of a prior serious felony within the meaning of section 667, subdivision (a)(1), and a prior serious or violent felony within the meaning of California's "Three Strikes" law. (§§ 667, subds. (b)-(i), 1170.12, subds. (a)-(d).) In the exercise of its discretion, the trial court dismissed the strike and sentenced appellant to prison for eight years, eight months. It suspended

---

[1] Unless otherwise stated, all statutory references are to the Penal Code.

execution of the sentence and placed appellant on probation for 48 months on condition that he serve 365 days in county jail.

Appellant contends: (1) the evidence is insufficient to support his convictions; (2) as to the criminal threat charge, the trial court erroneously failed to instruct the jury sua sponte that it must unanimously agree on the same specific criminal act; (3) appellant was denied his constitutional right to effective assistance of counsel; and (4) the trial court erroneously admitted evidence of his prior uncharged threats against other persons. We affirm.[2]

### Threat to Deter Officer Kelley from Performing His Duties

Officer David Kelley had prior police contacts with appellant and was aware of his disability. He was investigating a citizen's complaint that appellant had made "threats of bodily harm or death." He telephonically spoke with appellant and the following conversation ensued:

"[Appellant]: Gets [*sic*] your facts together, nigger.

"[Kelley]: Wow.

"[Appellant]: You're a fuckin' nigger.

"[Kelley]: Yeah.

"[Appellant]: Yeah, and you're a fuckin' nigger. Gets your facts together you fuckin' asshole.

"[Kelley]: Okay, Mr. Orloff.

"[Appellant]: Hey, you're a fuckin' dead nigger if you keep this shit up."

___

[2] Our summary of the facts is based solely on the evidence presented to the jury. Appellant's summary of the facts in his opening brief includes facts that were not admitted in evidence during the jury trial: facts in the preliminary hearing transcript, the probation report, a police report, and a declaration for an arrest warrant. This is improper. In determining whether the evidence is sufficient to support appellant's convictions, "'we must resolve the issue in the light of the *whole record* - - i.e., the entire picture of the defendant *put before the jury . . . .*'" (*People v. Johnson* (1980) 26 Cal.3d 557, 577, first italics in original, second italics added.) We deny appellant's request, filed on February 16, 2016, to take judicial notice of the transcript of a 911 call made by Dennis Masino on February 25, 2014. Neither the transcript nor the recording of the call was before the jury.

2

Even though Officer Kelley knew that appellant was confined to a wheelchair, he believed that the death threat was credible because appellant could pull the "trigger" of a firearm "to hurt, injure, kill someone." He was afraid that appellant might shoot him.

*Threat Made Against Pharmacy Manager Masino*

Dennis Masino worked as a store manager for CVS Pharmacy. His store filled appellant's prescriptions for pain medication. "[A] couple times that [appellant] was in the store, he got disruptive, started swearing at [Masino's] staff and calling them names." He was "just being very abusive verbally." He threatened "to get [Masino] fired for [his] incompetency and being rude."

In February 2014 Masino told appellant that he was no longer welcome at the store and that his prescription would be transferred "to any pharmacist that he wants." But appellant insisted that Masino had "to give him his medications."

On February 25, 2014, Masino received two telephone calls from appellant. In the first call, appellant said to "expect something when you least expect it." About 90 minutes later, Masino received the second call. Masino said, "This is Dennis. How may I help you?" Appellant replied, "You're dead," and hung up.

Masino understood the threat to mean that his "life [was] at risk." He was more scared than he had been in his entire life. He immediately called his district manager, who told him to call 911. For several months afterward, he took "extra precautions" while working at the store. Masino knew that appellant was in a wheelchair. But he considered appellant's death threat credible because "[a]nybody could carry a gun."

*Sufficiency of the Evidence Regarding*
*Attempt to Deter an Executive Officer*

Appellant claims that the evidence is insufficient to support his conviction of attempting, by means of a threat, to deter an executive officer from performing his duties. (§ 69.) The term "'executive officer'" includes peace officers "such as police officers or deputy sheriffs." (*In re Manuel G.* (1997) 16 Cal.4th 805, 818-819.) The

3

crime "requires a specific intent to interfere with the executive officer's performance of his duties [citation] . . . ." (*People v. Gutierrez* (2002) 28 Cal.4th 1083, 1153-1154; see also *People v. Lopez* (2005) 129 Cal.App.4th 1508, 1530.)

"[W]e review the whole record in the light most favorable to the judgment to determine whether it discloses substantial evidence — that is, evidence that is reasonable, credible, and of solid value — from which a reasonable trier of fact could find the defendant guilty beyond a reasonable doubt." (*People v. Stanley* (1995) 10 Cal.4th 764, 792.) "The test is not whether guilt is established beyond a reasonable doubt. [Citations.]" (*In re Roderick P.* (1972) 7 Cal.3d 801, 808.) "We must presume in support of the judgment the existence of every fact that the trier of fact could reasonably deduce from the evidence. [Citation.]" (*People v. Medina* (2009) 46 Cal.4th 913, 919.) "[W]e do not reweigh the evidence, resolve conflicts in the evidence, draw inferences contrary to the verdict, or reevaluate the credibility of witnesses. [Citation.]" (*People v. Little* (2004) 115 Cal.App.4th 766, 771.) "The conviction shall stand 'unless it appears "that upon no hypothesis whatever is there sufficient substantial evidence to support [the conviction]."' [Citation.]" (*People v. Cravens* (2012) 53 Cal.4th 500, 508.)

Appellant said to Officer Kelley, "Hey, you're a fuckin' dead nigger if you keep this shit up." Viewing this statement in the light most favorable to the judgment, we conclude that a reasonable trier of fact could find beyond a reasonable doubt that appellant was attempting to deter Officer Kelley from performing his duty of investigating a citizen's complaint that appellant had made "threats of bodily harm or death." Accordingly, substantial evidence supports appellant's conviction. We reject appellant's argument that he "lacked the specific intent to deter the performance of a lawful duty" because his threat merely "insists that the officer comply with a legal duty to have his facts correct."

*Sufficiency of the Evidence to Support Criminal*

*Threat as to the Pharmacist*

Appellant claims that the evidence is insufficient to support his conviction of making a criminal threat in violation of section 422. To prove this crime, "the

prosecution must establish all of the following: (1) that the defendant 'willfully threaten[ed] to commit a crime which will result in death or great bodily injury to another person,' (2) that the defendant made the threat 'with the specific intent that the statement . . . is to be taken as a threat, even if there is no intent of actually carrying it out,' (3) that the threat . . . was 'on its face and under the circumstances in which it [was] made, . . . so unequivocal, unconditional, immediate, and specific as to convey to the person threatened, a gravity of purpose and an immediate prospect of execution of the threat,' (4) that the threat actually caused the person threatened 'to be in sustained fear for his or her own safety or for his or her immediate family's safety,' and (5) that the threatened person's fear was 'reasonabl[e]' under the circumstances. [Citation.]" (*People v. Toledo* (2001) 26 Cal.4th 221, 227-228.)

Here, the criminal threat was appellant's statement to Masino, "You're dead." The threat was made over the telephone. Appellant asserts: "What differentiates this case from a true criminal threat is that the threat was issued over the phone by a person known by its recipient to be disabled." "Each time Masino saw appellant in the store he was in his motorized wheelchair." "Masino's knowledge of appellant's disability shows Masino knew appellant as someone not to be feared." A reasonable trier of fact could find that appellant's threat conveyed to Masino "'a gravity of purpose and an immediate prospect of execution of the threat'" and that Masino's fear for his safety "was 'reasonabl[e]' under the circumstances." (*People v. Toledo*, *supra*, 26 Cal.4th at p. 228.) Masino reasonably believed that, despite appellant's disability, he could carry and fire a gun.

Appellant also contends that his threat, "You're dead," was no more than "an angry utterance by a disgruntled customer frustrated that he was not allowed to obtain a prescribed pain medication . . . ." In support of his contention, appellant cites *In re Ricky T.* (2001) 87 Cal.App.4th 1132. There, a teacher opened a classroom door, which struck a 16-year-old student. The student "cursed [the teacher] and threatened him, saying, 'I'm going to get you.'" (*Id.*, at p. 1135.) The appellate court concluded that the evidence was insufficient to support the juvenile court's finding that the student had

5

made a criminal threat in violation of section 422. The court reasoned: "[T]he remark 'I'm going to get you' is ambiguous on its face and no more than a vague threat of retaliation without prospect of execution. [Citation.]" (*Id*., at p. 1138.) "Appellant's statement was an emotional response to an accident rather than a death threat that induced sustained fear. . . . Students who misbehave should be taught a lesson, but not, as in this case, a penal one." (*Id*., at p. 1141.) Here, in contrast, appellant's statement, "You're dead," was a death threat that induced sustained fear. Unlike *Ricky T*., appellant's threat was not merely "an angry adolescent's utterances." (*Ibid*.)

*Alleged Failure to Give a Unanimity Instruction*

"When an accusatory pleading charges the defendant with a single criminal act, and the evidence presented at trial tends to show more than one such unlawful act, either the prosecution must elect the specific act relied upon to prove the charge to the jury, or the court must instruct the jury that it must unanimously agree that the defendant committed the same specific criminal act. [Citation.] The duty to instruct on unanimity when no election has been made rests upon the court sua sponte. [Citation.] . . . [T]he principle has emerged that if the prosecution shows several acts, each of which could constitute a separate offense, a unanimity instruction is required. [Citation.]" (*People v. Melhado* (1998) 60 Cal.App.4th 1529, 1534.)

Appellant was charged with a single act of threatening Masino. Appellant argues that the evidence shows two criminal acts, but the prosecution did not elect the specific act relied upon and the trial court failed to give a unanimity instruction. One act was a clear death threat - "You're dead." The other act was a telephone call that appellant made approximately 90 minutes before the "You're dead" call. In the first call, appellant told Masino to "expect something when you least expect it." This vague, ambiguous statement cannot constitute a separate criminal threat in violation of section 422. Thus, the court was not required to instruct sua sponte on unanimity. (*People v. Melhado*, *supra*, 60 Cal.App.4th at p. 1534.)

6

*Effective Assistance of Counsel*

Appellant maintains that he was denied his constitutional right to effective assistance of counsel because counsel failed (1) to introduce evidence of appellant's mental illness; (2) to present the defense that, because of his mental illness and medications taken to treat it, appellant "did not have the specific intent to deter Officer Kelley from [the] performance of his lawful duties"; (3) "to bring out the history of the relationship between Officer Kelley and appellant"; (4) "to distinguish Penal Code § 69 from Penal Code § 422"; and (5) to present the defense that he did not threaten Officer Kelley.

The standard for evaluating a claim of ineffective counsel is set forth in *Strickland v. Washington* (1984) 466 U.S. 668, 687 [104 S.Ct. 2052, 80 L.Ed.2d 674]: "First, [appellant] must show that counsel's performance was deficient. . . . Second, [appellant] must show that the deficient performance prejudiced the defense."

To establish deficient performance, appellant must show that counsel's "performance fell below an objective standard of reasonableness under prevailing professional norms." (*In re Cudjo* (1999) 20 Cal.4th 673, 687.) Appellant's claims of deficient performance involve counsel's tactical decisions. "'"'Reviewing courts defer to counsel's reasonable tactical decisions in examining a claim of ineffective assistance of counsel [citation], and there is a "strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance."' [Citations.] . . . [W]e have explained that 'courts should not second-guess reasonable, if difficult, tactical decisions in the harsh light of hindsight' [citation]. 'Tactical errors are generally not deemed reversible, and counsel's decisionmaking must be evaluated in the context of the available facts.'"' [Citation.]" (*People v. Coffman* (2004) 34 Cal.4th 1, 86.)

"In the usual case, where counsel's trial tactics or strategic reasons for challenged decisions do not appear on the record, we will not find ineffective assistance of counsel on appeal unless there could be no conceivable reason for counsel's acts or omissions. [Citations.]" (*People v. Weaver* (2001) 26 Cal.4th 876, 926.) "Reviewing courts will reverse convictions on the ground of inadequate counsel only if the record on

appeal affirmatively discloses that counsel had no rational tactical purpose for his act or omission. In all other cases the conviction will be affirmed and the defendant relegated to habeas corpus proceedings at which evidence dehors the record may be taken to determine the basis, if any, for counsel's conduct or omission. [Citation.]" (*People v. Fosselman* (1983) 33 Cal.3d 572, 581-582.)

Appellant has failed to carry his burden of showing that there could have been no conceivable reason for trial counsel's allegedly deficient tactical decisions. With considerable hindsight, present retained appellate counsel simply speculates how a different defense could have been presented. In any event, appellant has failed to carry his burden of showing prejudice. Appellant "must carry his burden of proving prejudice as a 'demonstrable reality,' not simply speculation as to the effect of the errors or omissions of counsel. [Citation.]" (*People v. Williams* (1988) 44 Cal.3d 883, 937.) To prove prejudice, appellant "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." (*Strickland v. Washington*, *supra*, 466 U.S. at p. 694.) We do not lack confidence in the outcome. The evidence against appellant is overwhelming.

### *Prior Uncharged Threats*

Appellant claims that the trial court erroneously admitted evidence of his prior uncharged threats against other persons. Appellant made the threats in 2008 while litigating his workers' compensation claim before Judge Carero. Appellant telephoned Judge Carero's secretary, Belinda Doleman, and left a message "that he was going to get the fucking judge, that [the judge] better have a policeman available." Later, appellant left a message for Judge Carero that "if he didn't get what he wanted, he was going to jump out of his [wheel]chair and confront Judge Carero, . . . [and] make Judge Carero feel what it was like to be him and have a cervical discectomy . . . ." Appellant also said "something to [the] effect" that he was going "to break Judge Carero's legs." A few days later, appellant left a message that Judge Carero, Doleman, and David Brotman, another judge, "were going to meet members of the Russian Mafia" who "were going to make

8

sure [they] did what [appellant] wanted." Appellant said "that he wasn't going to call anymore because [the judges and the secretary] weren't going to hear from him and that no one was going to hear from [them] either."

In arguing that the prior uncharged threats were admissible, the prosecutor declared: "This is the modus operandi of [appellant]. He gets upset about something and he begins to make threats that are taken as credible because of the severity and the language . . . used." The trial court ruled that the evidence was admissible to show appellant's "intent when he made the threats" as well as "common scheme or plan, and what happens when [he] becomes upset with people who are not behaving or conforming with his expectations . . . ." The trial court concluded that, pursuant to Evidence Code section 352, the "probative value" of the evidence outweighed its prejudicial impact. The prior uncharged threats resulted in appellant's 2008 conviction of violating section 422, but the jury was not informed of the conviction.

Appellant maintains that the trial court abused its discretion "under Evidence Code § 352 because the probative value of the 2008 threats was far outweighed by [their] prejudicial effect." He contends that "[a]dmission of the 2008 threats was cumulative and unnecessary because each charge [in the instant case] . . . offered sufficient evidence for the . . . uncontested issues." Appellant argues that he was prejudiced by the "Russian Mafia" threat because it showed that, although he was disabled, his threats could "be carried out by somebody else." Thus, "[t]he Russian Mafia threat was the only threat that could cause a reasonable sustained fear given appellant's disability." Furthermore, "the 2008 Russian Mafia threat confused the issues and misled the jury because appellant did not allege to Masino or Officer Kelley that he had connections that could carry out a threat on his behalf."

Evidence Code section 352 provides, "The court in its discretion may exclude evidence if its probative value is substantially outweighed by the probability that its admission will . . . create substantial danger of undue prejudice, of confusing the issues, or of misleading the jury." "A trial court's exercise of discretion under Evidence Code section 352 will not be reversed unless it 'exceeds the bounds of reason, all of the

9

circumstances being considered.' [Citation.]" (*People v. Tran* (1996) 47 Cal.App.4th 759, 771.)

The trial court's ruling did not exceed the bounds of reason. The prior uncharged threats were not "cumulative" evidence. They were highly probative to show that appellant had "'committed similar distinctive acts of misconduct against similar victims under similar circumstances.' [Citation.]" (*People v. Walker* (2006) 139 Cal.App.4th 782, 803.) The evidence showed that, when appellant was frustrated by persons in positions of authority, he responded by making threats of violence. The prior threats were also probative to show that appellant "made the threat [against Masino] 'with the specific intent that the statement . . . [was] to be taken as a threat.'" (*People v. Toledo*, *supra*, 26 Cal.4th at p. 228.) In addition, the prior threats were probative to show that appellant made the death threat against Officer Kelley in an attempt to deter him from performing his duties. (§ 69.) "[N]one of the uncharged conduct was particularly inflammatory compared to" the death threats against Masino and Officer Kelley. (*People v. Lindberg* (2008) 45 Cal.4th 1, 25.)

Appellant's concern that the Russian Mafia threat "confused the issues and misled the jury" is unwarranted. The jury was instructed on the limited purpose for which the prior threats were admitted. We presume that the jury followed the instruction. (*People v. Lindberg*, *supra*, 45 Cal.4th at p. 26 [trial court's instruction on limited purpose of evidence of uncharged robberies "eliminated any danger 'of confusing the issues, or of misleading the jury'"].)

We reject appellant's claim that the limiting instruction was misleading because it specifically referred only to the threats against Doleman and Judge Brotman and did not mention the threats against Judge Carero. The instruction made clear that it applied generally to evidence of "other offenses of criminal threats that were not charged in this case," which included the threats against Judge Carero. In any event, appellant "did not object to or request amplification of the instructions provided and accordingly his claim that they were inadequate and misleading is forfeited on appeal. [Citation.]" (*People v. Souza* (2012) 54 Cal.4th 90, 120.)

10

*Conclusion*

The law does not countenance threats of bodily harm against citizens, peace officers, or judges. This is true whether the threats are clear or veiled. Threats against peace officers or judges are directed not only to the individual but also to the public office that the individual occupies. Such threats strike at the heart of government and will not be tolerated.

The judgment is affirmed.

CERTIFIED FOR PUBLICATION.


YEGAN, Acting P. J.


We concur:


PERREN, J.


TANGEMAN, J.


11

Nancy Ayers, Judge

Superior Court County of Ventura

_____

Scott H. Bentley, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Gerald A. Engler, Chief Assistant Attorney General, Lance E. Winters, Senior Assistant Attorney General, Steven D. Matthews, Supervising Deputy Attorney General, J. Michael Lehmann, Deputy Attorney General, for Plaintiff and Respondent.