Filed 6/3/25  P. v. Trevino CA3

<u>NOT</u> <u>TO</u> <u>BE</u> <u>PUBLISHED</u>

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(San Joaquin)

----

| | |
|---|---|
| THE PEOPLE, | C101066 |
| Plaintiff and Respondent, | (Super. Ct. No. STK-CR-FE-2023-0011624) |
| v. | |
| RICHARD JAY TREVINO, | |
| Defendant and Appellant. | |

A jury found defendant Richard Jay Trevino guilty of felony resisting an executive officer (Pen. Code,[1] § 69), misdemeanor resisting a peace officer (§ 148, subd. (a)(1)), and the trial court also found defendant had a prior strike conviction.  The trial court sentenced defendant to the middle term of two years in state prison on the felony conviction, doubled by the strike to four years, plus 364 days concurrent on the misdemeanor resisting a peace officer conviction, for a total term of four years.

On appeal, defendant contends (1) his conviction for violating section 69 is not supported by sufficient evidence; (2) the case should be remanded for the trial court to apply section 654 prohibiting multiple punishments for the same conduct; and (3) the trial court failed to consider defendant's mental illness as a mitigating factor in sentencing.

---

[1] Undesignated statutory references are to the Penal Code.

1

We will affirm the judgment.

## FACTUAL AND PROCEDURAL BACKGROUND

In January 2024, an information charged defendant with making criminal threats (§ 422, subd. (a); count 1), resisting arrest by an executive officer (§ 69; count 2), vandalism (§ 594, subd. (b)(1); count 3), and resisting, obstructing, delaying a peace officer (§ 148, subd. (a)(1); count 4). As to counts 1 through 3, the information alleged that defendant had a prior strike conviction (§§ 1170.12, subd. (b), 667, subd. (d)). As to count 1, the information also alleged that defendant had a prior serious felony conviction (§ 667, subd. (a)). As to counts 2 and 3, the information alleged as aggravating factors that defendant had sustained numerous prior convictions (Cal. Rules of Court, rule 4.421(b)(2))[2] and was on probation, mandatory supervision, post-release community supervision, or parole at the time of the crime (rule 4.421(b)(4)).

At trial, Stockton Police Officer Kathryn Abdallah, testified she responded to calls about a disturbance. Officer Abdallah saw a vehicle with a broken windshield and a brick on the ground next to it. After investigating, Officer Abdallah arrested defendant. When Officer Abdallah began to handcuff defendant, he tensed his arms and pulled away from her and her partner, Officer Seth Powell. Defendant did not listen to the officers' commands and repeatedly asked why he was being arrested. The officers braced defendant against his car and told him to relax his hands. The officers told defendant multiple times he would be tased if he did not comply. It took 30 seconds to a minute to handcuff defendant, a process which usually requires a few seconds.

The officers walked defendant to the police car. Defendant was making comments about how he had been good lately and did not know why the officers were arresting him. While in the police car, defendant asked what he was being arrested for. Officer Abdallah

---

[2]     Undesignated rule references are to the California Rules of Court.

told him that he had been arrested on a warrant and for vandalism, pointing at the vehicle's broken windshield. Defendant said it was an accident. Defendant said he did not want to talk anymore.

The officers drove defendant to the police station for fingerprinting, photographs, and to fill out paperwork. The officers placed defendant in a holding cell. At that point, defendant began making comments that he had killed before and could kill the officers, hurt them, and kill their families. Officer Abdallah advised defendant that he needed to be careful about what he said, or there could be an additional charge. Defendant continued, nonetheless, repeatedly stating that he could snap Officer Abdallah's neck and stab her in the neck. Another officer heard the comments defendant made and came to stand by the holding cell to make sure nothing happened.

Officer Abdallah testified that officers typically remove handcuffs during fingerprinting, but they kept the handcuffs on defendant due to his comments. The officers attempted to fingerprint defendant with his hands handcuffed behind his back, but could not turn his hands easily. The officers then handcuffed defendant in the front of his body, but he continued to tense his arms and pull his hands away. Officer Abdallah also testified that fingerprinting usually takes a few minutes, however, with defendant, the booking process took 15 to 20 minutes.

Officer Powell testified that when the officers approached defendant and said he was being detained, he became agitated and said he was not going to be detained. When they began to handcuff defendant, he pulled away several times before he could be placed in handcuffs. It took more time to handcuff defendant because he continued to pull away and resisted when told to put his hands behind his back. While the officers were attempting to arrest defendant, he "made comments such as I could have stabbed you guys, and I could hurt you, and things of that nature." At the police station, defendant continued to make these comments throughout the fingerprinting process. Defendant told Officer Abdallah "things about hurting children . . . ." Defendant said, "he could stab us.

3

He told me never to touch him like that, never touch somebody like that. He would stab me in the neck when I first walked up on him, and he said that a couple times."

The jury found defendant guilty of counts 2 and 4. The jury deadlocked on counts 1 and 3, and the trial court declared a mistrial on these counts. In a bench trial, the trial court found true allegations that defendant sustained numerous prior convictions of increasing seriousness (rule 4.421(b)(2)), was on probation, mandatory supervision, post-release community supervision, or parole at the time of the current crime (rule 4.421(b)(4)), and had a prior strike conviction (§ 1170.12, subd. (b)). The court sentenced defendant to the middle term on count 2, doubled by the strike, to four years and 364 days concurrent on count 4.

Defendant filed a timely notice of appeal.

DISCUSSION

I

*Section 69*

Defendant contends there was insufficient evidence to support his "conviction of felony threats to deter or delay an officer in violation of section 69." We disagree.

In reviewing the sufficiency of the evidence, we evaluate " ' "whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." ' " (*In re Manual G.* (1997) 16 Cal.4th 805, 822; see also see also *People v Orloff* (2016) 2 Cal.App.5th 947, 952 (*Orloff*).) " 'We " 'presume in support of the judgment the existence of every fact the trier could reasonably deduce from the evidence.' " ' " (*In re Manual G.*, at p. 822.) If such evidence reasonably supports the judgment, we cannot reverse simply because the circumstances could also support a contrary finding. (*Id.* at p. 823.)

Section 69 provides: "Every person who attempts, by means of any threat or violence, to deter or prevent an executive officer from performing any duty imposed upon

4

the officer by law, or who knowingly resists, by the use of force or violence, the officer, in the performance of his or her duty" shall be punished by a fine or imprisonment. (§ 69, subd. (a); see also *People v. Iboa* (2012) 207 Cal.App.4th 111, 117-118 (*Iboa*); *In re Manuel G., supra*, 16 Cal.4th at p. 814.) "Section 69 'sets forth two separate ways in which an offense can be committed. The first is attempting by threats or violence to deter or prevent an officer from performing a duty imposed by law; the second is resisting by force or violence an officer in the performance of his or her duty.' " (*People v. Smith* (2013) 57 Cal.4th 232, 240, quoting *In re Manuel G.*, at p. 814; see also *People v. Carrasco* (2008) 163 Cal.App.4th 978, 984-985.) In terms of deterrence, "[t]he section prohibits two distinct types of activity—'threats and violent conduct—when *either* activity constitutes an attempt "to deter or prevent an executive officer from performing any duty imposed upon such officer by law." ' " (*Iboa,* at p. 118, quoting *People v. Hines* (1997) 15 Cal.4th 997, 1061-1062.)

In this instance, the People asked the jury to find defendant guilty on the basis of the threats he made to deter or delay the officers from completing the booking process. In closing the prosecutor argued, "Did [defendant] necessarily get violent with these officers? No, but he threatened to . . . ."

Under section 69, the "offense can be established by ' "[a] threat, unaccompanied by any physical force" ' and may involve either an officer's immediate or future performance of his duty." (*People v. Carrasco, supra*, 163 Cal.App.4th at p. 985.) "[T]he 'threat' section 69 refers to is . . . a threat of unlawful violence in an attempt to deter the officer." (*Iboa, supra*, 207 Cal.App.4th at p. 118; see also *In re Manuel G., supra*, 16 Cal.4th at p. 815.) To sustain a conviction under section 69, "there must be sufficient evidence [defendant] threatened unlawful violence." (*Iboa,* at p. 119.) Section 69, however, does not require a showing that the defendant had the present ability to carry out the threats. (*People v. Nishi* (2012) 207 Cal.App.4th 954, 968.)

5

Violation of section 69 by threats "requires a specific intent to interfere with the executive officer's performance of his duties . . . ." (*People v. Gutierrez* (2002) 28 Cal.4th 1083, 1153.) "The surrounding circumstances may establish the specific intent to interfere with the officer's performance of his duties." (*In re M.L.B.* (1980) 110 Cal.App.3d 501, 503.)

Applying these principles, we conclude substantial evidence supports defendant's conviction for violating section 69. The evidence is undisputed that defendant threatened the officers, claiming he had the ability to kill them and hurt them. Defendant said repeatedly he had killed before and could kill the officers, could snap Officer Abdallah's neck, could have stabbed the officers, and could kill the officers' families. (See *People v. Hines, supra*, 15 Cal.4th at p. 1060 [substantial evidence of threats in violation of section 69 included the defendant's express threat to kill a deputy]; *In re M.L.B, supra*, 110 Cal.App.3d at pp. 503-504 [substantial evidence supported section 69 violation where the defendant yelled at police officers " 'how he was going to burn our houses and get our family' " and " 'We'll get your house. We'll get your cars. You can't be with your family twenty-four hours a day' "]; *Orloff, supra*, 2 Cal.App.5th at p. 953 [where defendant said, " 'Hey, you're a fuckin' dead [n-word] if you keep this shit up,' " to an officer investigating a complaint, substantial evidence supported the conviction].) The jury could reasonably have found that defendant's threats were an attempt to discourage the officers from completing fingerprinting and other steps in the booking process.

Defendant argues that threats to deter officers in violation of section 69 are "by their very nature conditional" and his "angry utterances were unconditional threats." Defendant asserts, "[o]nly a conditional threat can have the specific intent to deter as required." (Italics omitted.) This view is not supported by *Nishi,* the case defendant cites, which suggests that a conditional threat may violate section 69 but does not hold that *only a conditional threat* violates section 69. (*People v. Nishi, supra*, 207 Cal.App.4th at p. 967.) In any case, the evidence shows that defendant threatened

6

the officers as they attempted to finish booking him.  These circumstances support a reasonable inference that defendant sought to deter the officers from doing so.  (See *People v. Gutierrez, supra*, 28 Cal.4th at p. 1154 [threats made by an inmate in an angry tone of voice in the middle of a search of his cell supported a reasonable inference that the defendant intended to interfere with deputies' search].)

Defendant relies on *In re Ricky T.* (2001) 87 Cal.App.4th 1132 (*Rickey T.*) to argue that we should not rely on the particular words spoken when unaccompanied by physical force.  *Ricky T.*, however, involved a conviction under section 422.  (*Rickey T,* at p. 1134.)  We decline to draw analogies to section 422 when interpreting section 69.  A violation of section 69 will not necessarily or typically result in a violation of section 422.  Section 422 calls for additional elements not included in section 69.  Section 69 criminalizes any threat or violence intended to deter an officer, while section 422 requires a threat to commit a crime causing great bodily injury or death.  (*Orloff, supra,* 2 Cal.App.5th at p. 953, citing *People v. Toledo* (2001) 26 Cal.4th 221, 227-228.)  Section 422 further requires the recipient to experience actual sustained fear, another element absent from section 69.  (*Orloff*, at p. 953.)

Moreover, *Ricky T., supra*, 87 Cal.App.4th 1132, involved facts not present in this case.  *Rickey T.* relied on language in section 422 requiring " 'a gravity of purpose,' " and the " 'immediate prospect of execution of the threat,' " not found in section 69.  (*Ricky T., supra*, 87 Cal.App.4th at pp. 1137-1139.)  Additionally, the minor in *Rickey T.* made a single "outburst" as an "emotional response to an accident rather than a death threat that induced sustained fear."  (*Id.* at pp. 1140-1141.)  Here, defendant repeatedly threatened Officers Abdallah and Powell over a period that lasted 15 to 20 minutes.

We conclude that substantial evidence supports defendant's conviction for violating section 69.

## II

### *Section 654*

Defendant argues that his case should be remanded because the trial court failed to conduct a section 654 analysis in sentencing defendant for violation of sections 69 and 148, subdivision (a)(1).  Defendant argues that section 654 prohibits multiple punishments for these offenses because both were committed with a single intent.  According to defendant, his intent "was to delay the officer in the lawful performance of duties."  Defendant further asserts, "the resisting and deterring by threat were both alleged at the time that Officer Abdallah was initially handcuffing [defendant]."  Thus, defendant maintains "both offenses were part of the same indivisible course of conduct and punishment for both was error."  We disagree.

Section 654 provides in pertinent part:  "An act or omission that is punishable in different ways by different provisions of law may be punished under either of such provisions, but in no case shall the act or omission be punished under more than one provision."  (§ 654, subd. (a).)  Thus, "[s]ection 654 precludes multiple punishments for a single act or an indivisible course of conduct."  (*People v. Hester* (2000) 22 Cal.4th 290, 294.)

As the prosecutor explained in closing, defendant violated section 148 at the time of his arrest.  "And so cops conduct their investigation, they find out also that [defendant] has a warrant out for his arrest, so they go to arrest, and this is the [section] 148.  This is Count Number Four.  This is resisting arrest.  He doesn't want to go with them, he says, why am I being arrested?  He's struggling, he's pulling away, he won't let them put the handcuffs on him.  So they take him down to the police department to book him, and this is where Counts One and Two happen."

Count 2 is the charge that defendant violated section 69.  Here, the prosecutor told the jury:  "So now we come to Count Number Two, violation of Penal Code [section] 69," which the prosecutor specified "occurs at the police station where [defendant] is

8

being fingerprinted and booked." He continued: "In this case you have the threats that [defendant] made, the struggling, trying to do all the things that the officers testified that [defendant] did."

Thus, defendant mistakenly contends that both his violation of sections 69 and 148, subdivision (a)(1), occurred as he was being handcuffed, suggesting he suffered multiple punishments for a single act. Defendant, however, also maintains that both offenses were part of an indivisible course of conduct. We address that claim.**[3]**

" ' " 'Whether a course of criminal conduct is divisible . . . depends on the intent and objective of the actor.' [Citations.] '[I]f all the offenses were merely incidental to, or were the means of accomplishing or facilitating one objective, defendant may be found to have harbored a single intent and therefore may be punished only once.' " ' " (*People v. Jones* (2002) 103 Cal.App.4th 1139, 1143.) " 'If, however, the defendant had multiple or simultaneous objectives, independent of and not merely incidental to each other, the defendant may be punished for each violation committed in pursuit of each objective even though the violations shared common acts or were parts of an otherwise indivisible course of conduct. [Citation.]' " (*People v. Hairston* (2009) 174 Cal.App.4th 231, 240.) In addition, " 'a course of conduct divisible in time, although directed to one objective, may give rise to multiple violations and punishment. [Citations.]' [Citations.] This is particularly so where the offenses are temporally separated in such a way as to afford the defendant opportunity to reflect and to renew his or her intent before committing the next

---

**[3]**     We reject the People's claim that defendant forfeited the claim that the trial court improperly failed to apply section 654 at sentencing because trial counsel did not object. A claim that the trial court imposed an " 'unauthorized sentence' " constitutes an exception to the general requirement that the only claims raised below are reviewable on appeal. (*People v. Scott* (1994) 9 Cal.4th 331, 354.) "It is well settled . . . that the court acts in 'excess of its jurisdiction' and imposes an 'unauthorized' sentence when it erroneously stays or fails to stay execution of a sentence under section 654." (*Id.* at p. 354, fn. 17.)

one, thereby aggravating the violation of public security or policy already undertaken." (*People v. Gaio* (2000) 81 Cal.App.4th 919, 935; *People v. Andra* (2007) 156 Cal.App.4th 638, 640.)

Where, as here, a trial court sentences a defendant to separate terms without an express finding that the defendant entertained separate objectives, the trial court is deemed to have made an implied finding that each offense had a separate objective. (*People v. Islas* (2012) 210 Cal.App.4th 116, 129.) An implied finding that the defendant harbored a separate intent and objective will be upheld on appeal if supported by substantial evidence. (*Ibid*.) " 'We review the court's determination of [a defendant's] "separate intents" for sufficient evidence in a light most favorable to the judgment, and presume in support of the court's conclusion the existence of every fact the trier of fact could reasonably deduce from the evidence. [Citation.]' " (*People v. Andra, supra*, 156 Cal.App.4th at pp. 640-641.)

We conclude substantial evidence supports the trial court's implicit finding that defendant's resistance to being handcuffed when arrested was not part of the same, indivisible transaction as the threats defendant made during the booking process, even if defendant's objective in both offenses was to deter the officers from performing their lawful duties. When Officer Abdallah first attempted to put defendant in handcuffs, he tensed his arms, pulled away, and did not listen to commands, while asking why he was being arrested. The defendant continued to question the reason for his arrest while being walked to the police car, and when officers placed him in the car. After Officer Abdallah explained that defendant was being arrested for vandalism and a warrant, defendant said he did not want to talk anymore, and the officer stopped talking to him. This evidence indicates that defendant's resistance ended at that point, while the officers and defendant drove in silence to the police station. When they arrived at the police station the officers placed defendant in a holding cell, he made comments that he could kill and hurt the officers and their families, which he continued to do throughout the booking process.

10

Thus, there was substantial evidence from which the trial court could have determined that defendant's course of conduct was divisible in time between his resistance while being arrested and the threats he made at the police station.[4]

### III

*Mental Health as a Mitigating Factor*

Defendant contends that in his sentencing the trial court failed to consider his mental health as a mitigating factor.[5]  We disagree.

Defendant filed a motion for probation in which he argued he was ordered to complete mental health court after a conviction in 2022 for making criminal threats (§ 422, subd. (a)) and did so.  Defendant contended that "[t]his factor should favor probation as it indicates that while [defendant] has prior criminal history, he does abide by court orders to address underlying mental health struggles which contribute to his criminality."  He further argued "incarceration would likely only exacerbate [defendant's] mental health disorders that [defendant] has struggled with for years, but seems to benefit from the structure of collaborative court that provides specific services and treatment to defendants dealing with mental illness.  A stay in prison as a result of this incident would

---

[4]     Because we conclude that the trial court's implied finding that section 654 did not prohibit separate sentences for defendant's violation of sections 69 and 148, subdivision (a)(1), we need not consider defendant's claim based on the amendments to section 654 made by Assembly Bill No. 518 (2021-2022 Reg. Sess.) (Stats. 2021, ch. 441, § 1).

[5]     The People's response is that the trial court appropriately imposed the middle term rather than the lower term under section 1170.  (§ 1170, subd. (b)(6)(A) [court shall order the lower term if defendant's psychological, physical, or childhood trauma was a contributing factor to the commission of the offense, unless aggravating factors outweigh mitigating factors such that the lower term would not be in the interest of justice].)  On appeal, however, defendant does not claim the trial court erred by not imposing the lower term under section 1170, subdivision (b).  In fact, defendant never sought the lower term under this provision in sentencing.  Accordingly, defendant forfeited any claim on appeal that the trial court erred by not imposing the lower term under section 1170, subdivision (b)(6).  (*People v. Tilley* (2023) 92 Cal.App.5th 772, 778.)

11

likely destroy [defendant's] progress made in understanding and addressing his underlying mental health disorders." Defendant requested probation, a sentence to local jail time, and an order to report to mental health court. Defendant also requested that the trial court reduce his section 69 violation to a misdemeanor.

The probation report noted, "defendant reported being diagnosed with personality disorder and PTSD" and "reported he is taking Zoloft." The probation department recommended that defendant be denied probation. Regarding circumstances in mitigation under rule 4.423, the probation department found "None" relating to the crime or to defendant.

A number of mitigating factors in the California Rules of Court involve a defendant's mental health or psychological trauma. Rule 4.423(b)(2) provides: "The defendant was suffering from a mental or physical condition that significantly reduced culpability for the crime." Rule 4.423(b)(3) essentially mirrors section 1170, subdivision (b)(6)(A). Rule 4.423(b)(4) provides: "The commission of the current offense is connected to the defendant's prior victimization or childhood trauma, or mental illness as defined by section 1385[, subdivision] (c)."[6]

In sentencing defendant, the trial court commented: "With regard to the mitigating factors, under California Rules of Court[, rule] 4.423, circumstances in mitigation, with regard to the crime, probation found none. With regard to factors relating to the defendant, probation found none. With regard to factors relating to the defendant, the defense indicates that [defendant] has mental health implications, that he had just gone through Mental Health Court on another case, that is a factor under the Rules of Court

---

[6] Section 1385, subdivision (c)(5), provides that "a mental illness is a mental disorder as identified in the most recent edition of the Diagnostic and Statistical Manual of Mental Disorders, including, but not limited to, bipolar disorder, schizophrenia, schizoaffective disorder, or post-traumatic stress disorder but excluding antisocial personality disorder, borderline personality disorder, and pedophilia."

and it is–the defendant was suffering from a mental or physical condition that significantly reduced the culpability for the crime. . . [¶] . . .Now, there wasn't any specific information presented as to this particular crime.  The defendant has numerous convictions, and, I know that's the defense's argument, that they relate to his mental health issues.  *But there were, as I can see, no other mitigating fac tors.*"  (Italics added.)  The trial court denied probation based on "the increasing seriousness of defendant's conduct" and sentenced defendant as described above.

Rule 4.409 provides:  "Relevant factors enumerated in these rules must be considered by the sentencing judge, and will be deemed to have been considered unless the record affirmatively reflects otherwise."  Under this rule, the trial court here is deemed to have considered mitigating circumstances related to defendant's mental health, because the record does not affirmatively demonstrate that the trial court did not.  (See *People v. Pearson* (2019) 38 Cal.App.5th 112, 117.)  Moreover, the trial court actually discussed rule 4.423—essentially quoting the rule—and then concluded that it saw "no other mitigating factors."  Thus, the record affirmatively shows that the trial court *did* consider defendant's mental health as a mitigating factor in sentencing.

## DISPOSITION

The judgment is affirmed.

_____\s\_____,
Krause, J.

We concur:

\_\_\_\_\_\s\_____,
Earl, P. J.

\_\_\_\_\_\s\_____,
Hull, J.

13