Filed 4/9/21  P. v. Homan CA3

<u>NOT</u> <u>TO</u> <u>BE</u> <u>PUBLISHED</u>

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(Sacramento)

----

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>v.<br><br>DAVID HOMAN,<br><br>    Defendant and Appellant. | C089309<br><br>(Super. Ct. No. 18FE019304) |

A jury convicted defendant David Homan of one count of making a criminal threat and the trial court found defendant had sustained a prior serious felony conviction.

Defendant contends (1) reversal of his criminal threat conviction is required because there was insufficient evidence that the victim, a security guard, experienced sustained fear; (2) the trial court had a sua sponte duty to instruct the jury on attempted criminal threats as a lesser included offense to criminal threats; and (3) if this court concludes defendant waived the instructional error claim, that his trial counsel rendered ineffective assistance by objecting to the lesser included offense instruction.  We affirm the judgment.

1

## FACTUAL AND PROCEDURAL BACKGROUND

Defendant entered a Safeway store in Carmichael, California wearing a sheath on his waistband, which contained a 15-inch-long serrated knife.

A Safeway employee who worked as a clerk observed defendant placing food from a cart into his backpack and asked defendant, "Can I help you?" In response, defendant became irate and started calling the clerk a snitch and other names. While ensuring there was a distance between them, the clerk told defendant, "You gotta leave the store." Defendant started to walk out of the aisle while calling the clerk names. The clerk observed defendant "pop[] . . . a little latch" on the holster and start to pull the knife up. In response, the clerk took a couple of steps backward in order to have a safe distance between himself and defendant. Defendant then pulled the knife about halfway out of its sheath and said "he was going to kill" the clerk. Defendant threatened to kill the clerk more than once. Nevertheless, the clerk followed defendant into another aisle, keeping a distance of 10 or 15 feet, where defendant grabbed a box of cupcakes or donuts; the clerk told defendant numerous times, "You gotta go." The clerk followed defendant to the store exit, but the clerk did not go all the way outside the store because the security guard was there and all the clerk wanted was defendant out of the store.

Another Safeway employee alerted a security guard that someone in the store had a knife. The security guard observed defendant walk out of the Safeway about 15 to 20 feet in front of him and told defendant to leave. The security guard saw the knife on defendant's hip. While defendant was walking away in the parking lot, defendant kept turning back to the security guard and said, "Fuck you" and "You're not going to do shit." In response, the security guard said, "Just fucking leave the property." From about 15 feet away, defendant turned to face the security guard and said, "Fuck you, [racial epithet]. I'll fucking kill you," while grabbing the handle of the knife, which was still inside the sheath. Defendant took two steps towards the security guard, who in response, took two steps back. Defendant then started to leave the property while the security

2

guard and defendant continued to yell "fuck you" to each other. After defendant left the area, the security guard immediately called 911, while continuing to watch defendant from a safe distance. The security guard testified he had worked at this location for three years and had prior contacts with defendant there. He testified that it was his job to monitor the property and call the sheriff if "anything [wa]s going on, arguments, anything like that." The prosecutor asked the security guard about his state of mind during his encounter with defendant:

"Q When [defendant grabbed the handle of the knife] what were you thinking?

"A Just like, okay. So what -- what are you going to do now? Are you going to attempt to stab someone where there's witnesses? This doesn't play to[o] well. All we've been asking you is to leave. Now you're threatening to harm someone. That is a potential murder, attempted murder. Like, why would you do that? All you've been told to do is leave.

"Q When he did that, when he puts his hand on the knife and he threatens you, what did you do?

"A I just kind of stood there because we had about 15 feet of space between us, so it was just like, [a]ll right. What's going to happen now? Like, you know I'm going to call the cops at this point. You know that.

"Q When he makes that gesture towards the knife and makes that threat, were you scared at that point?

"A I'm [sic] just kind of understood, like, not so much scared, but understood that it's an actual threat in front of me. The actually [sic] threat that's imminent danger in front of me.

"Q So you know at that point he has the ability to harm you?

"A Yeah, fully capable of harming me.

"Q And is that what was going through your head?

"A Yeah.

"Q      At any point did he start to come towards you?

"A      He took about two steps.

"Q      When he did that, what did you do?

"A      Took two steps back.

"Q      Why did you do that?

"A      Because it's not smart to allow someone to gain ground on you when they have a weapon.

"Q      Right.

"When he takes those two steps in that split second, what's going through your head at that point?

"A      Still not really, like, fearful of, like, oh God, but it's just like he might actually try -- he kind of might actually try to get to me.  But I actually know, like, it's -- you gotta go.  It's too much space to make up to where you know once he passes a certain point, then it's like, [o]h, yeah.  He's trying to -- fully trying to stab me.

"Q      Okay.  What happens after he advances those couple of steps and then you back up?

"A      He starts to leave.  He starts to leave the property.  Still like the small back and forth, just like F you, fuck you.  Fuck you, that thing -- that whole thing, but he's leaving the property.

"Q      Why were you trying to get him to leave the property?

"A      That's -- [because], one, there's risk.  There's actual risk.  There's actually someone with a weapon that's actually threatening people on the property that they're going to use a weapon which at that point it doesn't matter.  It's like leave."

The prosecutor then played a recording of the 911 call for the jury.

The security guard explained that there was "a little irritation" in his voice in the recording because he needed the sheriff's department to respond "right there because it was a serious situation."

4

Defendant did not testify on his own behalf.

After the presentation of evidence, defendant moved for acquittal on count two -- making a criminal threat against the security guard -- on the basis that the "hearer of the threat has to be in sustained fear for it actually to be a [Penal Code section] 422" (Pen. Code, § 1118.1).[1] The trial court denied the motion.

The jury found defendant guilty of making criminal threats against the security guard (§ 422; count two), and found true the allegation that defendant personally used a deadly and dangerous weapon, to wit, a knife (§ 12022, subd. (b)(1)). However, the jury did not return a verdict on the remaining counts -- robbery (§ 211; count one) and making criminal threats against the clerk (§ 422; count three) -- and the trial court declared a mistrial as to those counts. In a bench trial, the court found defendant had sustained a prior serious felony conviction. In rejecting defendant's motion for the court to exercise its discretion under *Romero*[2] to strike his prior conviction, the trial court reasoned in part that it found the security guard to be "a very credible witness."

The trial court sentenced defendant to an aggregate sentence of 10 years in state prison as follows: the middle term of two years on count two (§ 422), doubled to four years for defendant's prior strike conviction, consecutive to one year for use of the knife (§ 12022, subd. (b)(1)). Additionally, the court imposed a five-year enhancement for the prior serious felony (§ 667, subd. (a)).

---

[1] Further undesignated statutory references are to the Penal Code.

[2] *People v. Superior Court (Romero)* (1996) 13 Cal.4th 497.

5

# DISCUSSION

## I.

### Sufficiency of the Evidence

Defendant contends the evidence was insufficient to support his conviction for making a criminal threat against the security guard. Specifically, defendant argues that the evidence was insufficient to establish the security guard experienced "sustained fear" where he never testified that he was in fear and the trial court found the security guard to be "very credible." We disagree.

" 'To determine the sufficiency of the evidence to support a conviction, an appellate court reviews the entire record in the light most favorable to the prosecution to determine whether it contains evidence that is reasonable, credible, and of solid value, from which a rational trier of fact could find the defendant guilty beyond a reasonable doubt.' [Citations.]" (*People v. Wallace* (2008) 44 Cal.4th 1032, 1077.) "In deciding the sufficiency of the evidence, a reviewing court resolves neither credibility issues nor evidentiary conflicts. [Citation.] Resolution of conflicts and inconsistencies in the testimony is the exclusive province of the trier of fact. [Citation.] Moreover, unless the testimony is physically impossible or inherently improbable, testimony of a single witness is sufficient to support a conviction. [Citation.]" (*People v. Young* (2005) 34 Cal.4th 1149, 1181.)

Section 422 sets forth the elements of the crime of criminal threat. "[T]o prove a violation of section 422, the prosecution must establish all of the following: (1) that the defendant 'willfully threaten[ed] to commit a crime which will result in death or great bodily injury to another person,' (2) that the defendant made the threat 'with the specific intent that the statement . . . is to be taken as a threat, even if there is no intent of actually carrying it out,' (3) that the threat -- which may be 'made verbally, in writing, or by means of an electronic communication device' -- was 'on its face and under the circumstances in which it [was] made, . . . so unequivocal, unconditional, immediate, and

6

specific as to convey to the person threatened, a gravity of purpose and an immediate prospect of execution of the threat,' (4) that the threat actually caused the person threatened 'to be in sustained fear for his or her own safety or for his or her immediate family's safety,' and (5) that the threatened person's fear was 'reasonabl[e]' under the circumstances. [Citation.]" (*People v. Toledo* (2001) 26 Cal.4th 221, 227-228.)

Because defendant implicitly concedes that all elements of section 422 were satisfied except for whether the security guard experienced "sustained fear," we focus our inquiry on that element. "Sustained fear" involves both the emotion the victim experiences and the time during which he or she experiences it. (*People v. Fierro* (2010) 180 Cal.App.4th 1342, 1349.) To be sustained, the fear must last " 'a period of time that extends beyond what is momentary, fleeting, or transitory' " (*Ibid.*; *People v. Wilson* (2015) 234 Cal.App.4th 193, 201), and ordinarily lasts "beyond the moments of the encounter." (*In re Ricky T.* (2001) 87 Cal.App.4th 1132, 1140 (*Ricky*).) However, depending on the circumstances, even one minute can be enough time. (*Fierro,* at p. 1349 ["When one believes he is about to die, a minute is longer than 'momentary, fleeting, or transitory.' [Citation.]"].)

"[S]ustained fear must be objectively and subjectively reasonable." (*People v. Roles* (2020) 44 Cal.App.5th 935, 942.) For instance, in *Ricky*, a student threatened his teacher, " 'I'm going to get you,' " but did not make any physical movements or gestures toward the teacher to further the threat. (*Ricky, supra*, 87 Cal.App.4th at pp. 1135-1136.) The teacher felt threatened and sent the student to the school office, but police were not notified until the next day. (*Id.* at pp. 1138.) In concluding there was nothing to indicate the teacher's fear was "more than fleeting or transitory," the court reasoned that the teacher's response "was an appropriate, necessary response to a disruptive classroom incident," and was "far from evincing a reasonable sustained fear." (*Id.* at p. 1140.)

Defendant points to *In re Sylvester C.* (2006) 137 Cal.App.4th 601, 604 for the proposition that there was not substantial evidence that the security guard actually

7

experienced "sustained fear." In *Sylvester C.*, a parking attendant intervened when he saw the defendant involved in a physical altercation in the parking lot. The defendant threatened that if the attendant called the police, he was going to kill the attendant and " 'everybody there.' " (*Ibid.*) The defendant then told a second attendant, " 'I am going to come and get you and I am going to kill you.' " (*Ibid.*) The first attendant testified at trial that " '[e]verybody got scared.' " (*Id.* at p. 606.) The trial court sought clarification whether "he, 'not we' " was scared, and the first attendant responded, " 'I was scared, yes.' " (*Ibid.*) The second attendant did not testify. (*Id.* at p. 604.) On appeal, the court concluded that " '[e]verybody got scared' [wa]s not substantial evidence of [the second attendant's] subjective fear." (*Id.* at p. 606.) The court concluded that the evidence was insufficient to prove the defendant guilty of criminal threats, but sufficient to prove him guilty of attempted criminal threat. (*Id.* at p. 607, 611.)

We conclude the evidence was sufficient to support defendant's conviction for making criminal threats against the security guard. The jury properly could have found that defendant's threat to the security guard -- "Fuck you, [racial epithet]. I'll fucking kill you," while grabbing the handle of a 15-inch knife -- reasonably could have caused the security guard to be in sustained fear for his safety. A Safeway employee alerted the security guard that someone in the store had a knife before he even saw defendant, and he too observed the knife on defendant's hip. Although the security guard testified he was "not so much scared," he understood the severity of the situation -- that defendant was making an "actual threat" and was "fully capable of harming [him]" or others. He testified he believed defendant "kind of might actually try to get to [him]," where it was "too much space to make up to where you know once he passes a certain point," defendant was "fully trying to stab [him]."

Unlike in *Sylvester C.*, where the second victim did not testify, the security guard did testify, and the jury heard the security guard's testimony and the 911 call and impliedly found sustained fear on the part of the security guard. Beginning with the

8

security guard's testimony, based on the statement of facts, he did not conclusively state he was not in fear for his life. He said he was not "so much scared," but did realize he was in "imminent danger" and that the defendant was "fully capable of harming" him with the knife. The defendant stepped towards the security guard, who retreated a couple steps in response. The security guard testified that he was not "fearful . . . like, oh God" when he stepped backwards to keep some distance between himself and the knife, but he was acutely aware that the defendant "might actually try to get to" him, i.e., stab him. While whatever fear he experienced did not rise to the level of, as he put it, "oh God," this testimony does not negate the jury's implied finding that he was in fact afraid. He backed up when the defendant came towards him, perhaps out of prudence, but more likely because he was afraid of being stabbed. He also immediately called 911 and testified that he was irritated when speaking to the 911 operator because "it was a serious situation."

Based on the security guard's testimony and his voice during the 911 call that he was placed in fear by the threat accompanied by defendant coming at him with the knife, the fear at least lasted as long as it took to make that phone call to 911. This might have been no more than a couple minutes. In *Fierro*, the appellate court explained "we believe that the minute during which [the victim] heard the threat and saw [the defendant's] weapon qualifies as 'sustained' under the statute." (*Fierro, supra,* 180 Cal.App.4th at p. 1349.) Here, *Fierro* supports a conclusion that the security guard's fear can be considered sustained even if it did not last for more than a minute or two.

Based on the security guard's testimony and 911 call, we conclude the evidence was sufficient to support defendant's conviction for making criminal threats against the security guard.[3]

---

[3] The trial court's statement after the jury trial, that it found the security guard to be "a very credible witness," does not undermine this conclusion. To the contrary, the trial court denied defendant's motion for acquittal on the basis that it found a jury could

## II.

## Lesser Included Offense Instruction

Defendant contends the trial court prejudicially erred by failing to instruct the jury sua sponte on attempted criminal threats as a lesser included offense of criminal threats. Defendant argues the claim is not waived because defense counsel never articulated a deliberate tactical reason for not requesting the instruction. Defendant further contends that there was substantial evidence that the security guard never experienced any fear, which would have absolved defendant of the criminal threats charge, but not attempted criminal threats. In response, the People contend defendant waived his instructional argument under the doctrine of invited error.[4] We need not decide whether the evidence warranted an instruction on an attempted criminal threat because we agree with the People and find any error invited.

"A trial court has an independent obligation to instruct the jury on all lesser included offenses the evidence warrants, even against the defense's wishes. Such instructions are required . . . only when . . . a jury could reasonably conclude that the defendant committed the lesser offense but not the greater one." (*People v. Hardy* (2018) 5 Cal.5th 56, 98 (*Hardy*), citing *People v. Breverman* (1998) 19 Cal.4th 142, 161-162;

---

"easily find beyond a reasonable doubt" that the elements of section 422 were satisfied. The trial court reasoned that fear is a "fairly nuanced concept." The trial court discussed the security guard's testimony and the 911 call, explaining that the security guard "seemed very cognizant of the fact that as [defendant] took two steps towards him, he better take two steps back to keep that space." The trial court also considered that the security guard seemed "exasperated with the 911 operator" because he mistakenly thought the operator was not dispatching an officer, and while he was "not hysterical by any means," "you can detect an element of concern and, arguably, fright."

[4] The People argue in the alternative, that the trial court had no sua sponte duty to instruct the jury on attempted criminal threats because there was substantial evidence that the security guard experienced sustained fear, and further, even if the trial court did err, any error was harmless. However, because we conclude that this claim is barred by invited error, we need not address these arguments.

*People v. Cady* (2016) 7 Cal.App.5th 134, 145 [" '[T]he court need instruct the jury on a lesser included offense only "[w]hen there is substantial evidence that an element of the charged offense is missing, but that the accused is guilty of" the lesser offense.' [Citation.]"].) "The obligation to instruct on lesser included offenses exists even when as a matter of trial tactics a defendant not only fails to request the instruction but expressly objects to its being given." (*Breverman,* at p. 154.)

An attempted criminal threat is a lesser included offense of making a criminal threat. (*People v. Toledo, supra*, 26 Cal.4th at p. 226.) "[A] defendant properly may be found guilty of attempted criminal threat whenever, acting with the specific intent to commit the offense of criminal threat, the defendant performs an act that goes beyond mere preparation and indicates that he or she is putting a plan into action." (*Id.* at p. 230.) For instance, a defendant properly may be found to have committed an attempted criminal threat where he makes a sufficient threat with the requisite intent, but the threat does not cause sustained fear. (*Id.* at p. 231.)

Nevertheless, a claim of instructional error may be waived under the doctrine of invited error. (*People v. Medellin* (2020) 45 Cal.App.5th 519, 525.) Invited error bars a defendant from challenging on appeal the trial court's failure to give a lesser included instruction " 'when, for tactical reasons, the defendant persuades a trial court not to instruct on a lesser included offense supported by the evidence.' [Citations.]" (*Hardy, supra*, 5 Cal.5th at p. 98; *People v. Bell* (2019) 7 Cal.5th 70, 108-109 (*Bell*).) "[T]he doctrine does not apply if defendant merely acquiesced in the absence of an instruction. [Citation.] 'The record must reflect that counsel had a deliberate tactical purpose.' [Citations.]" (*Bell,* at p. 109.) However, counsel does not have to have specifically stated what his or her tactical reasons were where counsel's tactical reasons are evident from the record what counsel's tactical reasons might have been. (*Hardy,* at p. 99 [inferring as a tactical reason that persuading the jury that the defendant committed the

11

lesser would have provided "little practical benefit" because it would force the jury to focus on circumstances that would be detrimental to the remaining serious charges].)

Here, the record shows that defense counsel had a deliberate tactical purpose to forgo an instruction on the lesser included offense to criminal threats. Contrary to defendant's contention, counsel was not required to state what his tactical reasons were. (*Hardy, supra*, 5 Cal.5th at p. 99.) The trial court specifically asked if the parties wanted it to instruct the jury regarding any lesser included offenses. Defense counsel responded that he only wanted an instruction for petty theft (as a lesser included offense to robbery). The trial court confirmed with defense counsel that he did not "wish the [trial] [c]ourt to instruct on the lesser included of attempted robbery in Count 1 or attempted criminal threats in Counts 2 or 3?" The trial court then confirmed with defense counsel that it was a "strategic move." The prosecutor agreed and stated he was "not asking for any lessers of all of the charges." The trial court then confirmed, "*Just to be clear, for the lawyers, I would be willing to instruct on any of those lesser includeds if you wanted them, but I don't want to get in the way of your trial strategy, so based on what you are saying, then, I will not be giving the lesser included of attempted robbery or attempted criminal threats, but I will give petty theft, which is a lesser included to robbery in this case. . . .*" (Italics added.)

Consistent with the strategy selected by defense counsel, counsel moved for an acquittal on count two on the basis that the sustained fear element of making a criminal threat against the security guard was not satisfied. Further, during closing argument defense counsel argued to the jury that the security guard's conduct was "not indicative of someone who is in sustained fear." In short, the defense strategy was patently to try to convince the jury to acquit defendant entirely by finding that the security guard did not experience sustained fear and to avoid the risk that an instruction on attempted criminal

12

threat would cause the jury to find defendant guilty on a lesser included offense (which did not require the victim to experience sustained fear).[5]

Accordingly, because the record shows that defense counsel had a deliberate tactical purpose to forgo the instruction on the lesser included offense, defendant may not invoke the trial court's failure to do so as a basis on which to reverse his conviction.

## III.

### Ineffective Assistance of Counsel

Anticipating our conclusion that he waived the instructional error claim in the trial court, defendant asserts that trial counsel rendered ineffective assistance by objecting to the lesser included offense instruction. We reject the contention.

" 'To establish ineffective assistance of counsel, a defendant must show that (1) counsel's representation fell below an objective standard of reasonableness under prevailing professional norms, and (2) counsel's deficient performance was prejudicial, i.e., there is a reasonable probability that, but for counsel's failings, the result would have been more favorable to the defendant.' [Citation.]" (*People v. Johnson* (2015) 60 Cal.4th 966, 979-980; see *Strickland v. Washington* (1984) 466 U.S. 668, 687-688, 694 [80 L.Ed.2d 674]; *Bell, supra*, 7 Cal.5th at p. 125.) We will "presume that 'counsel's performance fell within the wide range of professional competence and that counsel's actions and inactions can be explained as a matter of sound trial strategy.' [Citation.]" (*Bell,* at p. 125.)

"Reversal is appropriate 'only if there is affirmative evidence that counsel had " ' "no rational tactical purpose" ' " for an action or omission.' " (*People v. Medellin,*

---

[5] Indeed, defendant was charged with criminal threats against two victims, the store clerk and the security guard. Defense counsel's tactic of refusing an instruction on attempted criminal threats appears to have succeeded in avoiding defendant's conviction of any crime as to his conduct toward the store clerk.

*supra*, 45 Cal.App.5th at p. 525, fn. 4, quoting *People v. Mickel* (2016) 2 Cal.5th 181, 198; *People v. Chaney* (2005) 131 Cal.App.4th 253, 256, fn. 5 ["A decision to request no instructions on lesser included offenses would be a reasonable tactical decision consistent with the defense that defendant did not commit any crime at all."].)  Here, as discussed, counsel informed the court that his actions were strategic, and the record shows that defense counsel carried out that strategy through the trial.  We will not second guess counsel's representation.

DISPOSITION

The judgment is affirmed.

/s/

HOCH, J.

We concur:

/s/

BLEASE, Acting P. J.

/s/

KRAUSE, J.

14