Filed 7/17/24  P. v. Root CA3

<u>NOT</u> <u>TO</u> <u>BE</u> <u>PUBLISHED</u>

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(Shasta)

----

|  |  |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>  v.<br><br>STEPHEN RAY ROOT,<br><br>    Defendant and Appellant. | C099740<br><br>(Super. Ct. No. 23F1079) |

Defendant Stephen Ray Root threatened his son's neighbor, T.R., during an altercation between defendant and T.R.  Following a jury trial which ended in a mistrial, defendant waived a jury trial and the case was tried to the court, which found him guilty of attempted criminal threats and exhibiting a deadly weapon.  The trial court imposed an aggregate term of 16 months in prison.  On appeal, defendant argues there was insufficient evidence to support his conviction for attempted criminal threats.  We disagree and affirm the judgment.

## I.  PROCEDURAL HISTORY

An information alleged that defendant made felony criminal threats (Pen. Code,[1] § 422) against T.R. and exhibited a deadly weapon, a misdemeanor (§ 417, subd. (a)(1)).

---

[1]  Undesignated statutory references are to the Penal Code.

1

The information also alleged that defendant was previously convicted of a strike offense (§ 1170.12) and a serious felony (§ 667, subd. (a)(1)) and used a deadly weapon during the commission of the current offenses (§ 12022, subd. (b)(1)). In exchange for agreeing to a court trial, the People dismissed 1) the enhancements alleging a prior serious felony conviction, and 2) the allegation defendant used a deadly weapon during the commission of the offenses.

## II. FACTUAL HISTORY

Early one morning, defendant was visiting his son, who lived across the road from T.R. in a mobile home park. Defendant and T.R. had a history of conflict. At approximately 8:00 a.m. defendant started playing loud music while working on his chainsaw. The noise woke up T.R. and she heard defendant yell at another neighbor and tell that neighbor to get back inside her house. A short time later that morning, T.R. opened her front door and confronted defendant about the loud music.

T.R. testified that she stood at her front door and politely asked defendant to turn down the music. Another neighbor, M.B., testified that he heard T.R. yell curse words at defendant while she was complaining about the music. Defendant responded by yelling back at T.R. T.R. said she saw defendant swinging a weapon that she thought was an ice pick while he was quickly walking toward her. He stopped at T.R.'s porch approximately 12 feet away from her. Defendant's dog followed him to T.R.'s porch and started growling at T.R. Then defendant said, "I'm going to gut you like a fish" and "I'll fucking kill you. Go die." T.R. claimed she was afraid for her life and thought defendant would do something to her with the weapon because he was very aggressive and angry and was swinging it when he was walking toward her.

During cross-examination, T.R. said she told police that defendant threatened to kill her, however, she did not tell 911 dispatch that he did so. Defense counsel attempted to impeach T.R. by asking her why, at the preliminary hearing, she stated that she never

2

actually heard defendant threaten to kill her. T.R. responded that she was confused by the questioning and maintained that defendant threatened to kill her multiple times.

T.R.'s son, G.R., testified that he saw defendant grab a chainsaw file and walk toward his mother. Then, G.R. heard defendant say to her that he would gut her like a fish. T.R.'s best friend and neighbor, C.T., testified that she saw defendant swing a chainsaw file at T.R. while saying he would "cut [her] up like fish guts and kill [her]." M.B., however, could not see whether defendant was holding anything in his hands other than a piece of paper. M.B. also stated that T.R. told defendant she would shoot him if he came closer to her, but then told defendant to come get his dog off her property. When defendant eventually retrieved his dog and brought it back across the road, M.B. heard defendant say, "I didn't want to argue or fight or nothing."

Officer Tim Jaegel arrested defendant. While doing so, he found a chainsaw file in defendant's back pocket, which had a sharp point at the tip and was approximately one foot long. T.R. claimed that defendant had been "chugging" a bottle of vodka since early that morning but Jaegel did not find any vodka near defendant and did not smell any alcohol on him.

Before reaching its decision, the trial court observed that with "limited exceptions," all the witnesses had credibility issues. The trial court found M.B. to be the most credible witness and pointed to several instances where T.R.'s testimony of sustained fear was not credible. Specifically, the trial court found T.R. did not politely ask defendant to turn down his music. Rather, she threatened defendant and was "ready for [a confrontation]." Moreover, T.R. continued to engage with defendant even after he threatened her.

For these reasons, the trial court concluded that the People failed to prove beyond a reasonable doubt that T.R. was afraid of defendant after he threatened her. Even so, the court found, a reasonable person would have been afraid under these circumstances. In addition, the trial court also found that defendant had a chainsaw file in his hand as he walked toward T.R. and was swinging it in a "rude, angry, or threatening manner." As a

3

result, the court found defendant guilty of the lesser included crime of attempted criminal threats and misdemeanor brandishing of a weapon. The trial court sentenced defendant to an aggregate term of 16 months in state prison.

### III.  DISCUSSION

On appeal, defendant argues the evidence was insufficient to support his conviction for attempted criminal threats. More specifically, he claims there is insufficient evidence that he had the specific intent to make a threat, which "conveyed a gravity of purpose and an immediate prospect of execution." Defendant asserts that he made the statements during a "protracted emotional argument . . . which never went beyond an exchange of profanity and outlandish remarks" when he "succumbed to his raw anger."

#### A.      *Standard of Review*

In reviewing a challenge to the sufficiency of the evidence supporting a conviction, we review the record in the light most favorable to the judgment to determine whether it discloses substantial evidence. (*People v. Rodriguez* (1999) 20 Cal.4th 1, 11.) Substantial evidence is evidence that is credible, reasonable, and of solid value such that a reasonable trier of fact could find the defendant guilty beyond a reasonable doubt. (*Ibid*.) In addition, we resolve all conflicts in the evidence in support of the trier of fact's determination. (*People v. Honig* (1996) 48 Cal.App.4th 289, 350.) The judgment cannot be set aside unless it appears that under no hypothesis whatsoever is there sufficient evidence to support it. (*People v. Clark* (2011) 201 Cal.App.4th 235, 242.)

Further, " ' "[a] reviewing court neither reweighs evidence nor reevaluates a witness's credibility." ' " (*People v. Livingston* (2012) 53 Cal.4th 1145, 1170.) " 'Resolution of conflicts and inconsistencies in the testimony is the exclusive province of the trier of fact.' " (*People v. Brown* (2014) 59 Cal.4th 86, 106.) Only if a witness's testimony is physically impossible or its falsity is apparent without resorting to inferences or deductions, will an appellate court reject the statements given by a witness who has been believed by a trial court. (*People v. Thornton* (1974) 11 Cal.3d 738, 754,

4

disapproved on another ground in *People v. Flannel* (1979) 25 Cal.3d 668, 684, fn. 12.) "[T]he testimony of a single witness is sufficient to uphold a judgment even if it is contradicted by other evidence, inconsistent or false as to other portions." (*People v. Leigh* (1985) 168 Cal.App.3d 217, 221.) In addition, a trier of fact is entitled to reject some portions of a witness's testimony while accepting others. (*People v. Davis* (1957) 48 Cal.2d 241, 248.)

### B.        Applicable Legal Principles

To prove a criminal threat in violation of section 422, the People must prove: (1) the defendant willfully threatened to commit a crime that would result in death or great bodily injury to another person; (2) the defendant made the threat with the specific intent that the statement be taken as a threat, even if he had no intent to actually carry it out; (3) the threat was, on its face and under the circumstances in which it was made, so unequivocal, unconditional, immediate, and specific as to convey to the person threatened a gravity of purpose and an immediate prospect of execution of the threat; (4) the threat actually caused the person threatened to be in sustained fear for his or her own safety or for his or her immediate family's safety; and (5) the threatened person's fear was reasonable under the circumstances. (§ 422; *People v. Toledo* (2001) 26 Cal.4th 221, 227-228.) In determining whether a particular threat is a criminal threat, we consider all the circumstances surrounding the threat, including the words used, the manner in which the communication is conveyed, the prior relationship of the parties, and the actions of the accused after communicating the threat. (*In re Ryan D.* (2002) 100 Cal.App.4th 854, 860.) Section 422 is not intended to punish an angry utterance or emotional outburst unless it otherwise qualifies as a threat under the statute. (*In re Ricky T.* (2001) 87 Cal.App.4th 1132, 1141.)

The crime of attempted criminal threats is a lesser included offense of making a criminal threat. (*People v. Toledo*, *supra*, 26 Cal.4th at p. 230.) To establish an attempted criminal threat, the defendant must have undertaken a direct but ineffectual act toward

completion of the crime. (*People v. Chandler* (2014) 60 Cal.4th 508, 516.) One such circumstance is when a defendant, acting with the requisite intent, makes a sufficient threat that is "received and understood by the threatened person," but the person either does not understand the threat or it does not actually cause sustained fear. (*Id.* at p. 515.) The defendant must have had the specific intent that the threat be taken as such, under circumstances sufficient to convey a "gravity of purpose and an immediate prospect of execution" to reasonably cause the victim to be in sustained fear. (*Id*. at p. 516.)

The word "immediate" has been interpreted to mean "that degree of seriousness and imminence which is understood by the victim to be attached to the *future prospect* of the threat being carried out, should the conditions not be met." (*People v. Melhado* (1998) 60 Cal.App.4th 1529, 1538.) Sustained fear is a fear over a period of time " 'that extends beyond what is momentary, fleeting, or transitory.' " (*In re Ricky T.*, *supra*, 87 Cal.App.4th at p. 1140.) Further, the People must prove not only that the defendant had the subjective intent to threaten, but also that the threat was objectively threatening, i.e., "that the intended threat under the circumstances was sufficient to cause a reasonable person to be in sustained fear." (*People v. Chandler*, *supra*, 60 Cal.4th at pp. 511, 518, 525.)

### C.    Analysis

Viewed in the light most favorable to the judgment, we conclude substantial evidence supports the trial court's finding that defendant intended to put T.R. in sustained fear when he threatened her. T.R. and defendant had a history of conflict. On the morning of the incident, T.R. confronted defendant by yelling at him. In response, defendant walked aggressively toward T.R., swinging a long and sharply pointed chainsaw file, and threatened to kill her and "gut her like a fish." He was followed by his dog who growled at T.R. This explicit and direct threat to T.R., combined with their history of animosity, sufficiently demonstrates that defendant intended to convey a serious threat with the ability to carry it out.

6

In response to the evidence in support of the trial court's verdict, defendant points to contradictory testimony as proof there was insufficient evidence. While there are conflicts in the witness testimony, it is the trial court's exclusive role to resolve them. (*People v. Brown*, *supra*, 59 Cal.4th at pp. 105-106.) We will not reweigh that evidence on appeal. (*People v. Livingston*, *supra*, 53 Cal.4th at p. 1170.) The trial court was entitled to accept some portions of T.R.'s testimony while rejecting others. (*People v. Davis*, *supra*, 48 Cal.2d at p. 248.) Lastly, because substantial evidence supports the finding that defendant threatened T.R. with the intent of inducing sustained fear, the fact that defendant was angry and emotional when he made the threats does not relieve him of liability. (See *People v. Teal* (1998) 61 Cal.App.4th 277, 281.)

## IV.  DISPOSITION

The judgment is affirmed.


　　　　　　　　　　　　　　　　　　　　　 /s/
　　　　　　　　　　　　　　　　　　　　　 Wiseman, J.[*]



We concur:


　 /s/
Robie, Acting P. J.



　 /s/
Duarte, J.

_____

[*] Retired Associate Justice of the Court of Appeal, Fifth Appellate District, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.